**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

**CHARLES MAUTI,**

**Plaintiff**

**v.** **CA NO. 06-61T**

**LAUREN MATARESE;**
**FRANK BRANCATO; EDWARD MELLO, in his capacity as Chief of Police for the Town of Westerly;** ETSUKO MOTOKI ZUCZEK**, in her capacity as Finance Director for the Town of Westerly; JOHN DOE 1 THROUGH JOHN DOE 5; JANE DOE 1 THROUGH JANE DOE 5**

Defendants

PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS

Plaintiff Charles Mauti requests that the Court enter an Order under Rule 37 requiring that requires defendant Edward Mello, in his capacity as Chief of Police for the Town of Westerly, to produce the documents sought in Plaintiff's First Request for Production of Documents propounded on June 28, 2006.

This Motion is based on the attached Memorandum and the Exhibits filed therewith.

**Charles Mauti**
By his Attorneys,

/s/ John P. Gyorgy
John P. Gyorgy 3560
John R. Harrington 7173
NOEL & GYORGY LLP
50 South Main Street
Providence RI 02903
(401) 272-7400
(401) 621-5688 (Fax)

**Rule 37(a)(2)(A) Certification**

The undersigned certifies that he has in good faith attempted to confer with opposing counsel concerning the matters contained herein so as to avoid the necessity of court intervention, without success.

/s/ John P. Gyorgy

**Certification**

I hereby certify that on September 1, 2006, I sent a copy of the foregoing document to the following counsel of record, first class postage prepaid:

Michael Collucci, Esq.
Olenn & Penza
530 Greenwich Avenue
Warwick RI 02886

/s/ John P. Gyorgy

**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

**CHARLES MAUTI,**

**Plaintiff**

**v.** **CA NO. 06-61T**

**LAUREN MATARESE;**
**FRANK BRANCATO; EDWARD MELLO, in his capacity as Chief of Police for the Town of Westerly;** ETSUKO MOTOKI ZUCZEK**, in her capacity as Finance Director for the Town of Westerly; JOHN DOE 1 THROUGH JOHN DOE 5; JANE DOE 1 THROUGH JANE DOE 5**

Defendants

MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS

The Plaintiff propounded twenty three specific requests for documents. To eighteen of the requests the Town interposed blanket objections and produced nothing. To two others it claimed it had no responsive documents. In response to the three remaining requests, the Town produced a mere ninety pages of documents. But even that *overstates* the quality of the Town's response, since those ninety pages consisted of the following:

- Twelve pages were copies of documents that the Plaintiff gave the defendants as part of his initial disclosures back in June – *his* copies of the arrest report and the pleadings from the Rhode Island District Court prosecution. The Town produced *none of its own records of the arrest* which is at the center of this case.

- A two page computer printout showing that someone at the Westerly Police Department twice accessed the National Criminal Information Center ("NCIC") database looking for information about Mr. Mauti – once on the day of his arrest and *once the day before*. This same document was produced months ago.

- Thirteen pages comprised of two job descriptions, one for the department Captain (the rank currently held by defendant Lauren Matarese), and one for Patrol Officers, the rank currently held by defendant Brancato.

- Sixty-three of the ninety pages were transcripts or certificates for training programs attended by defendants Matarese and Brancato; although specifically requested, none of the training materials used in the courses were produced.

This Motion seeks an Order compelling responses to Request Nos. 1 through 8, and 10 through 23. As required by Local Rule 37(a), each Request and the corresponding response is set forth below, followed by Plaintiff's argument as to why production of the documents should be ordered.

**Request 1:**

Documents relating to, describing or evidencing Mr. Mauti's arrest on May 10, 2005.

**Response:** Produced are the following documents:

- Arrest Report No. 05-393-AR;
- Citation/Violation Ticket No. 05-504-000531;
- District Court Summons for appearance on May 20, 2005;
- District Court Criminal Complaint No. 05-001882;
- Notice of court dates;
- Bail and recognizance conditions;
- Letter dated May 23, 2005, from Lise Gescheidt to Leo Manfred;

The few documents listed above produced by the Town were not the Town's records of Mr. Mauti's arrest. Instead the Town's counsel copied the documents that Mr. Mauti gave to the Town as part of his initial disclosures under Rule 26 in June. Each page of the

documents produced by the Town bears the notation stamped on them by plaintiff's counsel prior to producing them to the defendants in this action, noting the state court's expungement Order in the criminal case filed by the Town against Mr. Mauti. See Exhibit A. It may be stating the obvious to observe that the plaintiff is entitled to the *Town's* records in response to a document request propounded to the Town, but given the response it appears necessary to have that obvious a proposition enshrined in a Court Order if the plaintiff is to obtain even the most basic discovery.

Although consisting of nothing but the documents obtained from Mr. Mauti, the Town's response also purports to be complete. The Town can not credibly suggest that there are no other documents. For example, when he was arrested Mr. Mauti was taken to the Westerly police station where he was photographed and fingerprinted. The photograph and the fingerprint card, as well as any other physical or electronic record of his "booking" – such as the tape from any closed-circuit camera in the booking area – should have been produced, since they are within the definition of documents in Rule 34(a).[1] Two officers – defendants Matarese and Brancato – were directly involved in Mr. Mauti's arrest. Despite the Town's claim in response to Request 23, page 19 *infra*, that it has no records of any communications to or from defendants Matarese or Brancato on the day of the arrest, it is reasonable to assume that their communications with each other, with other officers, and/or with the Department dispatcher at the time of Mr. Mauti's arrest were recorded in some form. Any record of those calls is a responsive document that was not produced. If the dispatcher made an entry in a physical log of a call from either of them, it should have been produced.

[1] Rule 34(a) expressly defines "documents" to include "writings, drawings, graphs, charts, photographs, phonorecords, and other data compilations from which information can be obtained, translated, if necessary, by the respondent through detection devices into reasonably usable form." Fed. R. Civ. P. 34(a).

We know that Mr. Mauti's arrest was recorded in the police department computer system, since defense counsel has said in writing that he has reviewed the past three years worth of computerized arrest data. Exhibit B. We also know that the Town has had since May an audiotape of the state district court proceeding that followed the arrest, since weeks *after* serving the response to these document requests defense counsel provided an unofficial[2] and incomplete transcript of the proceeding in connection with a proposed summary judgment motion. Although clearly within the scope of Request 1, neither the tape nor the transcript was produced. That is precisely the kind of hide-and-seek nonsense that the discovery rules are designed to prevent. The Plaintiff is entitled to the tape.

The above list is not exhaustive of the documents one would reasonably expect to receive in response to the simple request that was made, and it is not the Plaintiff's burden to imagine every last type of record the Town might have. It was and remains the Town's duty to search its own records and to make certain that its response is complete. Given that it produced only copies of documents obtained from Mr. Mauti, its "response" was really no response at all.

**Request 2:**

> Documents relating to, describing or evidencing any regulations, policies, or procedures followed by the Town of Westerly Police Department (hereafter "Department"), including but not limited to any departmental or statewide policy or procedure manuals, handbooks, any supplements or amendments thereto, and internal memoranda.
>
> **Response:**
>
>> Objection. Overbroad and not related and/or limited to the issues involved in this complaint, or likely to lead to the discovery of admissible evidence.

[2] State district court proceedings are not stenographically recorded.

The Plaintiff's claims under section 1983 are premised upon his illegal arrest by defendant's Matarese and Brancato. Municipal liability under section 1983 requires proof that the individual defendants acted pursuant to an established practice or policy governing the conduct of individual officers that results in constitutional violation alleged. *E.g., City of Canton v. Harris*, 489 U.S. 378, 388-389 (1989). The issues raised by Mr. Mauti's claims in this case implicate general issues such as arrest procedures, probable cause, traffic stops, the Rhode Island motor vehicle code, access to and/or misuse of computerized criminal information databases, and the substance and adequacy of training and supervision. The applicable legal standard makes the regulations, policies, or procedures followed (or not followed) by Westerly's police officers not just relevant but *central* to those claims.

This request was made on the assumption that the Westerly Police Department has a policies and procedures handbook, or a compilation in some form of the standard procedures members of the department are expected/required to follow in given circumstances. The assumption that such a manual exists is based on the excerpt already provided by the defendants at the beginning of the case – a short description of the Westerly Police Department's arrest procedures that appears to have been removed from a three-ring binder. Exhibit C. The Plaintiff is entitled to a complete copy of the policies and procedures manual itself, not just the pieces of it that defense counsel picks and chooses.

**Request 3:**

> Documents relating to, describing or evidencing any training or instruction of the members of the Department during the past five years that included any of the following subjects:
>
> a. arrest procedure
> b. arrest warrants
> c. probable cause

d. traffic stops
e. access to criminal information databases
f. preparation of reports.

**Response:**

Objection. Overbroad and not related and/or limited to the issues involved in this complaint, or likely to lead to the discovery of admissible evidence.

Each of the listed subjects is directly relevant to the claims stated in the current complaint. They are also relevant to possible additional claims against the current defendants as well as others (named in the complaint as "Doe" defendants). A brief statement of the factual setting of the claims makes this clear: Captain Matarese, the second-ranking officer in the Westerly Police Department, stated in her arrest report that she pulled Mr. Mauti's car over because an unidentified construction worker pointed at it as she was driving by. That is far from the "information upon which a reasonably prudent person would believe the suspect had committed or was committing a crime" that is the benchmark of probable cause. *E.g., United States v. Young,* 105 F.3d 1, 6 (1st Cir. 1997). Having been stopped illegally, Mr. Mauti was then subjected to a full custodial warrantless arrest because he had not traded his still-valid Arizona drivers license for a Rhode Island license within thirty days of becoming a Rhode Island resident in violation of R.I.G.L. § 31-10-1 – a statutory violation that is not even a criminal offense under Rhode Island law. From that description, it is clear that five of the six subjects listed in this Request are relevant.

The request for documents relating to training in "access to criminal information databases" was prompted by a document that the Town itself disclosed four months ago. Mr. Mauti was arrested on May 10, 2005. Not surprisingly, at the time of his arrest either Matarese or Brancato ran Mr. Mauti's name through the criminal information databases

made available to local departments in Rhode Island by the State Police "RILETS" system.[3] What is surprising – absent some explanation yet to be offered – is that another inquiry about Mr. Mauti was made by someone at the Westerly police station on May 9th – the day *before* he was arrested. The printout showing these two inquiries is attached as Exhibit D.

Access to such computerized databases is closely monitored and controlled, and limited to legitimate law-enforcement purposes. Misuse of the system is itself a crime. *E.g.*, 18 U.S.C. § 1030(a)(2). Based on the Town's own disclosures, the possible misuse of the RILETS/NCIC database is unquestionably at issue in this case. The policies, procedures governing access use of the databases are relevant to the existing claims as well as additional claims that may be brought based on what is learned about who accessed this information as well as their stated purpose for doing so. It is clear that the department follows some policies and procedures, since defendant Matarese has attended no fewer than three training seminars on that specific subject, Exhibit E, and the department has a specific officer designated as the "Terminal Agency Coordinator" presumably responsible for the department's use of the RILETS system. *Id.*, page 1.

**Request 4:**

> Documents relating to, describing or evidencing the training of Lauren Matarese and Frank Brancato, whether conducted by the Department, the Municipal Police Training Academy, or any other agency or individual, including but not limited to transcripts of attendance, grades or other records of performance, courses of instruction, descriptions of course work or materials, and certificates or diplomas.
>
> **Response**:

---

[3] The national database is often referred to as "NCIC," since it is maintained and monitored by the National Crime Information Center, part of the Criminal Justice Information Services Division of the Federal Bureau of Investigation. As with the BCI (Bureau of Criminal Identification) and DMV databases, access to the NCIC database by municipal departments in Rhode Island is centralized through the Rhode Island Law Enforcement Telecommunications System (RILETS) maintained by the State Police.

Produced: Matarese - Beta Stamp #'s 1 - 54; Brancato - Beta Stamp #'s 55 - 65.

The sixty-five pages of documents produced by the Town in response to this Request consist of certificates or transcripts of attendance, some of which contain the titles of courses taken or training attended, but nothing else. The Town provided none of the training materials used in connection with the courses or training sessions referenced in the certificates or transcripts. Such materials are unquestionably relevant to plaintiff's claims, and unquestionably exist. Whether written, or video or audio tapes, their production is necessary if the Plaintiff is to have a meaningful opportunity to depose the individual defendants as to their own knowledge and training, as well as other department witnesses regarding the adequacy of training and supervision generally. The Town did not object to producing those materials; it simply failed to do so.

**Request 5:**

> Documents relating to, describing or evidencing policies, procedures, or rules followed by the Department with respect to access to and use of the databases maintained by or made available through the Rhode Island Law Enforcement Telecommunications System (RILETS), the National Criminal Information Center (NCIC), the Rhode Island Registry of Motor Vehicles, or the Rhode Island Bureau of Criminal Identification (BCI), or which describe, interpret, or decipher the coded inputs and outputs of any of these databases.
>
> **Response:**
>
> > Objection, overbroad as to databases not alleged or shown to have been used in connection with the plaintiff. As to the RILETS database, objection, as the same is immaterial and not calculated to lead to the discovery of admissible evidence, see *State v. Bjerke*, 697 A.2d 1069 (R.I. 1997).

It is ludicrous to suggest that the Plaintiff is required to make a showing as to which databases were accessed by Department employees, when that information is solely within the defendants' control. The objection is also based on what Plaintiff believes to be a false

premise, since it is the plaintiff's understanding that when such an inquiry is made through RILETS, it is standard procedure that all of the available databases are queried at the same time. The specific objection as to the "RILETS database" is nonsensical since RILETS is simply the conduit through which local agencies access the other databases referred to.

Documents already produced by the Town show that someone used the Westerly Police Department computers to access these databases through the RILETS system. It has also produced, among the fifty-odd pages of training certificates produced in response to Request 4 for defendant Matarese, no fewer than three that relate specifically to training in the policies and procedures governing the use of the databases available through the NCIC/RILETS system. Exhibit E. Under these circumstances, the defendant has no basis for refusing to produce the responsive material.

Finally, this is the first of many objections in which the Town excuses its failure to provide the requested discovery by citing *State v. Bjerke*, 697 A.2d 1069 (R.I. 1997). *Bjerke* dealt with the issue of probable cause to conduct a traffic stop. Nowhere in the response does defense counsel explain how or why the decision excuses compliance with the discovery rules, and none is apparent from a reading of the decision. Although included in a number of the following objections, Plaintiff does not see a point in repeating this part of the argument.

**Request 6:**

> Documents relating to, describing or evidencing any audits of the Department's access to and use of the databases maintained by or made available through RILETS, the NCIC, the Rhode Island Registry of Motor Vehicles, or the Rhode Island BCI for the past five (5) years, whether conducted by the Department or another agency, including audit procedures and/or audit results.

**Response:**

> Objection, overbroad as to databases not alleged or shown to have been used in connection with the plaintiff. As to the RILETS database, objection, as the same is immaterial and not calculated to lead to the discovery of admissible evidence, see *State v. Bjerke*, 697 A.2d 1069 (R.I. 1997).

One of the means by which the limitations on access to the NCIC database are monitored and enforced is through periodic audits of the use made of the system by local departments. Such audits would disclose whether the apparently improper inquiry made concerning Mr. Mauti the day before his arrest was an isolated incident or part of a pattern of misuse by the Westerly Police Department. The Plaintiff is entitled to discovery that would show whether or not there is such a pattern of misuse that involves *any* of the restricted-access databases. If the Department itself conducts such audits or is provided with the results of audits conducted by others (i.e., the Rhode Island State Police), they should be produced.

**Request 7:**

> Documents relating to, describing or evidencing any inquiries made by any member of the Department or other Town employee regarding Charles Mauti using the databases maintained by or made available through RILETS, the NCIC, the Rhode Island Registry of Motor Vehicles, or the Rhode Island BCI.
>
> **Response:**
>
> > See RILETS checks previously produced by defense counsel on or about May 19, 2006, and reproduced here.

Plaintiff requested all "documents" as defined by Rule 34(a), a term which includes recordings. The Plaintiff assumes that all communications among and between Westerly police officers and dispatchers or other employees of the Town of Westerly Police Department are recorded in some form. The Town has failed to provide a copy of any recordings of communications requesting that inquiry be made to any of the referenced databases. If such documents exist, they should be produced. If not, the Town should say so.

**Request 8:**

> Documents relating to, describing or evidencing computer terminal identifiers, user identification codes, or other information that allows for identification of the persons who performed any such inquiries through RILETS, the NCIC, the Rhode Island Registry of Motor Vehicles, or the Rhode Island BCI and the equipment that they used.
>
> **Response:**
>
> > Such documents, to the extent they exist, are not within the possession or control of the Westerly Police Department.

The two page printout that plaintiff has obtained contains coded information which presumably can be interpreted by employees of the Town of Westerly Police Department. Plaintiff specifically requested and is clearly entitled to any documents, including any available through the computer program by which the databases are accessed, which describe how to interpret the information contained in that document.

**Requests 10 through 18**

Requests 10 through 18 seek documents that will provide evidence of the policies and practices of the Westerly Police Department regarding the treatment of traffic offenses generally, and regarding violations of R.I.G.L. § 31-10-1 (the only charge against Mr. Mauti) specifically. In response to each of these requests the Town produced nothing, basing its refusal on the same blanket objection to each. Because the substance of these requests was similar, and the responses were identical,[4] Plaintiff's argument regarding this group of requests follows the response to Request 18, page 14 *infra*.

**Request 10:**

Documents prepared by the Department and submitted to the Attorney General pursuant

[4] The only exception was the omission of the citation of *State v. Berke* from the Response to Request 10.

to the "Traffic Stops Statistics Act," R.I.G.L. § 31-21.1-1.

**Response:**

Objection, overbroad and not calculated to lead to the discovery of admissible evidence.

**Request 11:**

Documents relating to, describing or evidencing any arrests by members of the Department for the violation of R.I.G.L. § 31-10-1(a) during the past five years.

**Response:**

Objection, overbroad, immaterial, and not calculated to lead to the discovery of admissible evidence, see *State v. Bjerke*, infra.

**Request 12:**

Documents relating to, describing or evidencing any citations issued by members of the Department for the violation of R.I.G.L. § 31-10-1(a) during the past five years.

**Response:**

Objection, overbroad, immaterial, and not calculated to lead to the discovery of admissible evidence, see *State v. Bjerke*, infra.

**Request 13:**

Documents relating to, describing or evidencing any misdemeanor prosecutions by the Town of Westerly based upon violation of R.I.G.L. § 31-10-1(a) during the past five years.

**Response:**

Objection, overbroad, immaterial, and not calculated to lead to the discovery of admissible evidence, see *State v. Bjerke*, infra.

**Request 14:**

Documents relating to, describing or evidencing all traffic stops, citations issued, and arrests made by defendant Matarese during the past five years.

**Response:**

Objection, overbroad, immaterial, and not calculated to lead to the discovery of admissible evidence, see *State v. Bjerke*, infra.

**Request 15:**

Documents relating to, describing or evidencing all traffic stops, citations issued, and arrests made by defendant Brancato during the past five years.

**Response:**

Objection, overbroad, immaterial, and not calculated to lead to the discovery of admissible evidence, see *State v. Bjerke*, infra.

**Request 16:**

Documents relating to, describing or evidencing any traffic citations issued by members of the Department within the last two years, including the specific statutory offense charged.

**Response:**

Objection, overbroad, immaterial, and not calculated to lead to the discovery of admissible evidence, see *State v. Bjerke*, infra.

**Request 17:**

Documents relating to, describing or evidencing any custodial arrests by members of the Department for violation of any section of Title 31 of the Rhode Island General Laws within the last two years, including the specific statutory offense charged.

**Response:**

Objection, overbroad, immaterial, and not calculated to lead to the discovery of admissible evidence, see *State v. Bjerke*, infra.

**Request 18:**

Documents relating to, describing or evidencing any misdemeanor prosecutions by the Town of Westerly based upon violation of any section of Title 31 of the Rhode Island General Laws within the last two years, including the specific statutory offense charged.

**Response:**

Objection, overbroad, immaterial, and not calculated to lead to the discovery of admissible evidence, see *State v. Bjerke*, infra.

The Plaintiff's claims under section 1983 are premised upon his illegal arrest by defendant's Matarese and Brancato. Municipal liability under section 1983 requires proof that the individual defendants acted pursuant to an established practice or policy governing the conduct of individual officers that results in the violation of constitutional rights alleged. *E.g.*, *City of Canton v. Harris*, 489 U.S. 378, 388-389 (1989). Unless the defendants are willing to stipulate that it is the policy and practice of the Town of Westerly to subject drivers who commit offenses classified as "civil violations" under Rhode Island law to full custodial arrest, the Town must produce the documents responsive to Requests 10 - 13.

Conversely, if it is the policy of the Department and the practice of Westerly's police officers to instead issue *citations* for violations of R.I.G.L. § 31-10-1, the *Town* might have a defense to liability for the section 1983 claims, but the Plaintiff would be entitled to pursue the issue of why defendants Matarese and Brancato *departed* from such a policy or practice in arresting Mr. Mauti, and whether either or both of them did so routinely. Requests 14 and 15 were directed to the practices of these two individual defendants.

The claim that the discovery sought is "immaterial" rings especially hollow given that defense counsel as part of the initial disclosures in the case thought it helpful to relay by letter his conclusions – predictably favorable to the Town – based upon *his* review of the computerized information maintained by the Westerly Police Department:

> 2. Prior Custodial Arrests for a Similar Charge
>
> This one was a little more difficult to obtain information on because at some point, it would require someone to go through voluminous documents to retrieve actual reports, etc. However, looking at computer data for the prior three years, it appears that there have been at least six custodial arrests for persons operating without a license. What I do not know, without having the actual reports, is whether any of those persons had a similar fact pattern to Mr. Mauti, i.e. living in Rhode Island for some period of time after having been previously issued a license from another state.

Exhibit B, page 1. The Plaintiff is entitled to review the same computerized arrest data that defense counsel has. He is also entitled to review the hard copies of the arrest reports – voluminous or not – in order to ascertain any specific information that, as defense counsel noted, may be missing from the computerized database. Defense counsel's letter confirmed that the information concerning arrests is readily available for at least the last three years. That information must be produced.

**Request 19 :**

> Documents relating to, describing or evidencing the job responsibilities of the members of the Department, including but not limited to those specifically applicable to defendants Matarese and Brancato.
>
> **Response:**
>
> > Objection, as the same relates to officers other than Matarese and Brancato. As to Matarese and Brancato, job descriptions of captain and patrolman are produced.

This objection, and the limited response, ignores the fact that the Police Chief is a defendant. It also ignores the fact that the department includes, among other designations, a Training Officer, shift supervisors, a Terminal Agency Coordinator (responsible for the NCIC/RILETS system), and doubtless other specific positions. The claims include negligent training and supervision. Simply put, the Plaintiff is entitled to understand how the department works (or doesn't), and that requires understanding who is responsible for what.

There is no basis for counsel's attempt to limit this inquiry to the officers sued individually; This is a public police department, not a secret society.

**Request 20:**

> Documents listing all Department personnel, including support personnel, with job titles and responsibilities.
>
> **Response:**
>
>> Objection, overbroad, unduly burdensome, and violative of Rhode Island's Access to Public Records Act.

If there is no list of Police Department personnel, such as – for example – an internal phone directory, the Town could have said so. If there is one, the plaintiff fails to see the "undue burden" in providing a copy.

The assertion that the Rhode Island Access to Public Records Act ("APRA") justifies the refusal to comply with the Request for Production is incorrect. The APRA does not limit the scope of discovery under Rhode Island's Rules of Civil Procedure, much less the rights of litigants in federal court. Indeed, the state rules governing the scope of discovery limit the APRA's scope, not – as defense counsel would have it – the other way around. The APRA expressly incorporates the scope of discovery available under the state rules of civil procedure to define an exemption from disclosure for documents that "would not be available by law or rule of court to an opposing party in litigation." R.I.G.L. § 38-2-2(4)(E). This provision prevents a litigant from obtaining through an APRA request documents that are non-discoverable, such as work product. *E.g. Hydron Lab. v. Department of Attorney Gen.*, 492 A.2d 135, 139 (R.I. 1985)(" exemption 5 of APRA was enacted to limit production under APRA to the scope of production allowed in pending litigation"). Conversely, if they

*are* available in discovery, they are also available under APRA unless a different exemption applies.

**Request 21:**

> Documents relating to, describing or evidencing any suspension, investigation, reprimand, or other discipline of either defendant Matarese or defendant Brancato by the Department during the last ten years, including but not limited to Matarese's suspension and/or administrative leave from the Department in or about November 2005.
>
> **Response:**
>
>> Objection, such records, to the extent they exist, are protected from publication by the Rhode Island Law Enforcement Officers Bill of Rights and Rhode Island's Access to Public Records Act.

This objection suffers from the same misplaced reliance on an inapplicable state statute as did the response to Request 20. To justify its blanket refusal to produce any documents regarding prior disciplinary actions against the two arresting officers, the Town is apparently[5] relying on the limits Rhode Island law places on its ability to issue public *statements* regarding *pending* disciplinary proceedings against police officers, limits spelled out in the Law Enforcement Officers Bill of Rights. R.I.G.L. § 42-28.6-2(m) ("LEOBOR").

LEOBOR provides no basis for the blanket refusal to produce documents for at least four reasons. First, Plaintiff is not asking the Police Chief or anyone else to make a public statement; he is requesting documents. Second, to the knowledge of undersigned counsel, there are no pending disciplinary proceedings. Third, the restriction on public statements by the Town does not apply if the officer in question has made a public statement. Fourth, but

[5] We say "apparently" since, as with the Town's attempt to use the Access to Public Records Act to avoid its discovery obligations, defense counsel did not specify the section of the Law Enforcement Officers Bill of Rights upon which the refusal to produce any documents was based.

by no means least, as with the APRA discussed above, LEOBOR contains no provision that restricts the scope of discovery available to litigants under the rules of civil procedure.

**Request 22:**

> Telephone records for the department-issued cell phones and pagers used by defendants Matarese and Brancato for the months of April, May, and June 2005.
>
> **Response:**
>
> > Objection, overbroad, unduly burdensome, and not limited to matters remotely related to this action.

Especially in light of the discovery that someone accessed the RILETS/NCIC database to run a background check on Mr. Mauti the day before his custodial arrest for a minor traffic offense, the plaintiff believes that the actions of the defendants may have been influenced, in part, by others. Plaintiff requests these Town phone records as a means of determining who defendants Brancato and Matarese had contact with in the period prior and subsequent to Mr. Mauti's arrest.

**Request 23:**

> Records of any communications to or from defendants Matarese and/or Brancato on May 9th and May 10th, 2005.
>
> **Response:**
>
> > None.

See argument regarding Request No. 1, at page 3 *supra.*

**Request for Hearing**

Plaintiff requests a hearing on this Motion.

**Charles Mauti**
By his Attorneys,

/s/ John P. Gyorgy
John P. Gyorgy 3560
John R. Harrington 7173
NOEL & GYORGY LLP
50 South Main Street
Providence RI 02903
(401) 272-7400
(401) 621-5688 (Fax)

**Rule 37(a)(2)(A) Certification**

The undersigned certifies that he has in good faith attempted to confer with opposing counsel concerning the matters contained herein so as to avoid the necessity of court intervention, without success.

**Certification**

I hereby certify that on September 1, 2006, I sent a copy of the foregoing document to the following counsel of record, first class postage prepaid:

Michael Collucci, Esq.
Olenn & Penza
530 Greenwich Avenue
Warwick RI 02886

/s/ John P. Gyorgy