MJC:mes 6615/8 \pleading\66158objmcpmemo.wpd

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| CHARLES MAUTI | : | |
| | : | |
| VS. | : | C.A. NO. 06-61T |
| | : | |
| LAUREN MATARESE, ET AL | : | |

**DEFENDANT'S OBJECTION TO MOTION TO COMPEL PRODUCTION**

Now comes the defendant, Edward Mello, and objects to the plaintiff's motion to compel production of documents. In support thereof, your defendant has attached a memorandum of law.

DEFENDANT,
By his Attorney,

/s/ Michael J. Colucci
Michael J. Colucci, Esq. #3302
OLENN & PENZA, LLP
530 Greenwich Avenue
Warwick, RI 02886
PHONE: (401) 737-3700
FAX: (401) 737-5499

**CERTIFICATION**

I certify that I sent a true copy of the within on 9/15/06 to:

John P. Gyorgy, Esq.
50 South Main Street
Providence, RI 02903

/s/ Michael J. Colucci

MJC:mes 6615/8 \pleading\66158objmcpmemo.wpd

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| CHARLES MAUTI | : | |
| | : | |
| VS. | : | C.A. NO. 06-61T |
| | : | |
| LAUREN MATARESE, ET AL | : | |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF OBJECTION TO MOTION TO COMPEL PRODUCTION**

The plaintiff's rather lengthy request for documents, which came on the heal of approximately 180 requests for admissions (between three defendants) is a classic example of "overkill," amounting to a needless "fishing expedition." This is buttressed by the fact that the essential facts as to what happened, along with the players involved, are, for all intents and purposes, undisputed and relate to an alleged wrongful arrest of the plaintiff for a period of less than one hour and without any allegation of excessive force.[1] A brief statement of the facts is necessary in order to properly dispose of this motion.

This matter arises out of a motor vehicle stop occurring on May 10, 2005, in Westerly, Rhode Island. Just prior to the stop, the plaintiff, Charles Mauti, had been traveling in the area of Grove Avenue. Road construction was ongoing in the area. At or about the same time, defendant, Lauren Matarese (Matarese) was traveling on the same roadway. Matarese is a captain with the Westerly Police Department and had just finished fueling her police vehicle (unmarked) and was on her way to the police station to begin her tour of duty. As she passed through the site, a construction worker began motioning to her about a vehicle (the plaintiff's vehicle) that had just passed through. The worker's hand movements and body language was suggestive of some sort of problem or potential infraction that may have occurred with Mauti's operation of his motor vehicle. Matarese then initiated a motor vehicle stop of the plaintiff. As part thereof, Matarese requested the plaintiff's

[1]The defendants are presently poised to file for summary judgment and are awaiting permission from the court to do so.

license and registration.

Mauti was a resident of the State of Rhode Island for several years as of the date of this motor vehicle stop. In fact, he had been employed as the building official from the neighboring town of Hopkinton, Rhode Island and had been since the late 1990's. As such, his name was recognized by Matarese when he produced a license bearing his name, but issued from the State of Arizona. Matarese advised the plaintiff of the requirement for Rhode Island residents to be licensed by the State of Rhode Island and inquired as to the status of his Rhode Island license. Mauti gave various reasons for not having a Rhode Island license and ultimately confirmed that he had never applied for one. He was then placed under arrest by Captain Matarese. Co-defendant, Frank Brancato, a patrolman with the Westerly Police Department, was dispatched to the scene and transported the plaintiff to the police station. Identification processing was accomplished and the plaintiff was released to appear in the local district court on May 20, 2005. He was charged under R.I.G.L. 31-10-1. As a "professional courtesy" Matarese then drove Mauti to the local registry of motor vehicles to assist him in getting a Rhode Island license. She advised him that if he could obtain a Rhode Island license prior to his court appearance, she would be able to dismiss the charge. Mauti was able to obtain a temporary Rhode Island permit, after which, Matarese drove him back to his vehicle where they parted company.

It is also practical at this point, to address an issue that runs through many of the requests for documents sought by the plaintiff. The same relates to his allegation that there was ulterior motive for his arrest on the day in question. The plaintiff points to the fact that a check on his license status was done the day prior to his arrest. Despite the fact that this check confirmed that the plaintiff did not have a Rhode Island license (a fact that he does not dispute), the plaintiff attaches an evil motive thereto. However, such an argument completely ignores the well settled proposition that an officer's conduct under Section 1983 is judge by its objective reasonableness. His ulterior motive or subjective state of mind is not to be considered in judging the reasonableness of his decision, *Floyd v. Farrel*, 765 F.2d 1. As the U.S. Supreme Court has stated, "good intentions will not make a bad arrest good and bad intentions will not make a good arrest bad", *Graham v. Connor*, 109 S. Ct. 1865, 1872 (1989).

This is entirely consistent with Rhode Island state law on the subject, see *State v. Bjerk*, 697 A.2d 1069 (R.I. 1997). In *Bjerk*, the police had received a tip that Mr. Bjerk may have been driving

his vehicle while intoxicated. The dispatcher ran his license plate and determined that the registration had been previously suspended. While the court agreed that the scant information received with the "tip" would not have supported the probable cause to initiate a stop, the information about the suspended registration amounted, not only to reasonable suspicion of criminal activity, but probable cause that would justify a full stop, *Id.* at 1072 [5]. From that point on, any evidence obtained pursuant to that lawful stop, such as the odor of alcohol, slurred speech, etc. would support an arrest for suspicion of driving while under the influence, *Id.*

The significance here is that the *Bjerk* court stated that a computer check of the defendant's license plate was not a Fourth Amendment search. Since motor vehicle registration information is entirely within the control and custody of the department of motor vehicles, there is no expectation of privacy and the police officer did not conduct an invalid search by running a computer check on the vehicle's license plates, *Id.* at 1072-1073 [5-6]. On the issue of pretext - the court went on to state that the subjective intention of the officer played no role in the calculus, *Id.* As long as probable cause was present, it did not matter that the police officer may have had a dual motive, *Id.*, see also *State v. Scurry*, 636 A.2d 719, 723 [5] (R.I. 1994).

With the above background in mind, your defendant now address the requests as set out in the plaintiff's motion to compel.

**REQUEST #1 - ARREST RELATED DOCUMENTS**

As evidenced by the plaintiff's own motion, the defendant responded to this request for various reports relating to the plaintiff's arrest. Apparently, plaintiff is unsatisfied that most (not all as claimed in the motion) of the documents produced were earlier provided to the defense by the plaintiff. The plaintiff complains that he is entitled the "Town's" records, not merely copies of his own. That merely begs the question–since when did the plaintiff create a police report relating to his arrest? It was created by the Town to begin with and provided to the plaintiff prior to the suit. As such, he then "gave it back" to the Town during the voluntary disclosure period at the inception of this case.

Accordingly, the plaintiff did get the "Town's" documents. It is true that the documents produced bear the stamp placed upon them by plaintiff's counsel indicating an underlying state court

expungement order. The defense recalls that it was the plaintiff that requested that these documents be used in this proceeding so that the integrity of the underlying expungement order would be protected. Moreover, this expungement order was obtained at the request of plaintiff's criminal defense lawyer. Plaintiff now argues that the Town cannot credibly suggest that there are no other documents. This overlooks the fact of the expungement order and the request (at the voluntary disclosure level) by defense counsel that the plaintiff produce such documents because the same might no longer be available at the Westerly Police Department due to the expungement order.

The plaintiff goes on to state that there should be a photograph and fingerprint card as well as, perhaps, a tape recording from the closed circuit camera in the booking area. It is defense counsel's understanding that any tapes/disks from the camera would have long ago been re-circulated in the ordinary course and that the booking photograph and fingerprint card would have been electronically "blocked" because of the expungement order. Theoretically, the electronic block can be removed and it is believed that those documents can be retrieved if that is done. However, the futility of the exercise is all too apparent. There is no dispute that the plaintiff was arrested and processed (it was admitted to in the requests for admissions) and the plaintiff does not allege any physical abuse in the booking area.

The plaintiff's motion also seeks communication logs that might document a call made about the arrest. That seems beyond the scope of the request, especially in light of the fact that the documents produced confirm the arrest and, along with the defendant's response to requests for admissions, confirm that the defendant Matarese made the decision to arrest the plaintiff and that Officer Brancato was dispatched to transport the plaintiff to the station and that both were involved in the booking process.

The plaintiff's motion also makes reference to a transcript of certain state district court proceedings before Judge Erickson (the plaintiff's arraignment) which was produced recently in conjunction with required summary judgment discussions. Plaintiff argues that this "was clearly within the scope of request number 1" and further describes it as a "kind of hide-and-seek nonsense."

The transcript (and the audiotape from which it was made) are in no way within the scope of request number 1. Those were not departmental records related to the plaintiff's arrest. Rather they are work product materials, obtained from the state district court, and which were produced to

plaintiff's counsel as required by defendant's obligation to confer with opposing counsel regarding the defendant's intent to file a summary judgment motion.

**REQUEST #2 - POLICY MANUAL AND INTERNAL DOCUMENTS OF THE POLICE DEPARTMENT**

This request is clearly over broad in that it seeks all regulations, policies and procedures, procedure manuals, handbooks, any supplements or amendments thereto, and internal memoranda. The request is not limited, in any fashion, to the issues involved in this complaint. This matter involves an arrest following a traffic stop. Plaintiff does not allege excessive force. He does not allege an improper police pursuit or an improper use of defensive tactics, weapons, etc. Yet, the plaintiff literally wants everything from "A to Z" despite the fact that the subject matter of such an "A to Z" request would require the production of voluminous documents that have nothing to do with the issues in the case nor can they reasonably be anticipated to lead to admissible evidence.

**REQUEST #3 - TRAINING DOCUMENTS OF ALL MEMBERS OF THE DEPARTMENT**

The defendant objected to this request because it sought five years of training documents for all members of the department rather than being limited to the officers involved in this action. As to the two officers directly involved, defendant Matarese and Brancato, their entire training file has been provided in response to request number 4.

**REQUEST #4 - TRAINING DOCUMENTS OF DEFENDANTS MATARESE AND BRANCATO**

The entire training files of those two defendants were produced and the plaintiff has no basis to move for further production. The training certificates produced cover nearly 20 years of training, most of which came from outside agencies such as the Rhode Island Municipal Police Academy. As such, the scope of the plaintiff's request is clearly over broad and oppressive.

**REQUEST #5 - POLICIES AND PROCEDURES RELATING TO TELECOMMUNICATION SYSTEMS** (RILETS) (NCIC) (BCI)

At the outset of the case, the defendant voluntarily produced the RILETS checks that were made in connection with the plaintiff. That document, along with depositions which the plaintiff has

since taken (subsequent to the filing of this motion) confirm that a BCI check was not run on the plaintiff. The Westerly Police Department's policy and procedure for use of the RILETS system was voluntarily produced at the deposition of Lt. Wright on September 12, 2006. That may have rendered this portion of the motion moot. However, to the extent that it does not and to the extent that the plaintiff wants additional documentation on other systems, your defendant points to the *Bjerk* case noted earlier in this memoranda, which makes the telecommunication checks an immaterial matter.

**REQUEST #6 - TELECOMMUNICATIONS AUDITS**

In this request, the plaintiff sought any audits of the police department's access to and use of the databases maintained and available through RILETS, NCIC, the Registry of Motor Vehicles and BCI for the past 5 years. Once again, the request is over broad and immaterial. Moreover, Lt. Wright's deposition testimony suggests that the plaintiff may be mistaken as to his reference to "audits." Plaintiff's motion states that such audits would disclose whether there were any improper inquiries made or misuse of the system. It is not clear what the plaintiff is seeking here (beyond its objectionable nature). Lt. Wright described the audit process of the Rhode Island State Police as being more of a check and balance situation whereby outdated information (such as missing persons and/or stolen property, etc.) is updated and/or removed from the system as required. They are not investigations of improper use of the system. Moreover, Lt. Wright, the department's Terminal Agency Coordinator, testified that he was not aware of any findings of misuse of the telecommunication systems.

**REQUEST #7 - INQUIRIES MADE OF THE PLAINTIFF THROUGH RILETS, NCIC, REGISTRY OF MOTOR VEHICLES OR THE RHODE ISLAND BCI**

The defendant has produced these documents on at least two occasions. First, during the voluntary disclosure period and subsequently, as a formal response to this request. Quite simply, the defendant has already complied with this request. In his motion, plaintiff now states that he wants copies of any records of communications requesting the inquiries. Assuming such recordings even exist (which is doubtful given the lapse of time), such items were not made a part of this request and it tends to suggest that no matter what the defendant produces, the plaintiff will simply not be satisfied

and will seek more by way of motion.

**REQUEST #8 - CODE IDENTIFIERS FOR INQUIRIES MADE THROUGH RILETS, NCIC, REGISTRY OF MOTOR VEHICLES OR THE RHODE ISLAND BCI SYSTEM**

In this request, the plaintiff states that he is seeking information and/or documents which describe how to interpret the information contained in the RILETS printout. Your defendant acknowledges that there are certain coded items in said document. Those codes belong to and are created and maintained by the Rhode Island State Police and the defendant suggests that that would be the proper entity to direct a subpoena to for the information that the plaintiff seeks.

**REQUEST #10 - DOCUMENTS SUBMITTED TO THE ATTORNEY GENERAL PURSUANT TO THE "TRAFFIC STOPS STATISTICS ACT"**

This act relates to the statewide directive for police departments to compile information for the study of racial profiling purposes. The same bears no relationship to any of the issues in this case and was properly objected to.

**REQUEST #11 - ARRESTS BY MEMBERS OF THE DEPARTMENT FOR VIOLATION OF R.I.G.L. §31-10-1(a)**

The plaintiff seeks 5 years worth of any such documents by any of the members of the police department. The defendant objected to this as being over broad, immaterial and not calculated to lead to the discovery of admissible evidence, citing *State v. Bjerk*. The defendant would be willing to withdraw his objection and conduct a search for such records to the extent that they can be accessed, at least initially, through the defendant's computer system.

**REQUEST #12 - (CITATIONS ISSUED) AND RQUEST #13 - (MISDEMEANOR PROSECUTIONS) RELATING TO R.I.G.L. §31-10-1(a)**

Defendant incorporates its response to request number 11.

**REQUEST #14 - ALL TRAFFIC STOPS, CITATIONS ISSUED AND ARRESTS MADE BY DEFENDANT MATARESE, AND REQUEST #15 - MADE BY DEFENDANT BRANCATO FOR THE PAST FIVE YEARS**

Defendant's objection should stand as the requested documents are clearly over broad, immaterial and not calculated to lead to the discovery of admissible evidence. The issue and the basis for the plaintiff's arrest is very narrow (i.e. arrested for not driving with a Rhode Island operator's license) and as such, the documents that are requested would relate to all kinds of matters other than "no license, arrests and/or citations" and would therefore bear no legal relevance or materiality to the issues in this case, and furthermore, needlessly expose the identities of numerous arrestees.

**REQUEST #16 - ANY TRAFFIC CITATIONS ISSUED BY MEMBERS OF THE DEPARTMENT WITHIN THE LAST 2 YEARS, INCLUDING THE SPECIFIC STATUTORY OFFENSE CHARGED**

The defendant would be willing to withdraw its objection if the request was limited to the specific statutory offense charged against the plaintiff. Theoretically, such a limited request might have some relevancy to the case, but the request, as currently written, is clearly over broad and immaterial.

**REQUEST #17 - CUSTODIAL ARRESTS BY MEMBERS OF THE DEPARTMENT FOR VIOLATION OF ANY SECTION OF TITLE 31 OF THE GENERAL LAWS WITHIN THE LAST 2 YEARS, INCLUDING THE SPECIFIC STATUTORY OFFENSE CHARGED**

Defendant incorporates its response to request number 16 above.

**REQUEST #18 - MISDEMEANOR PROSECUTIONS FOR ANY VIOLATIONS OF ANY SECTION OF TITLE 31 WITHIN THE LAST 2 YEARS, INCLUDING THE SPECIFIC STATUTORY OFFENSE CHARGED**

Again, the defendant incorporates its response to request number 16 above.

**REQUEST #19 - DOCUMENTS DESCRIBING JOB RESPONSIBILITIES OF ALL MEMBERS OF THE DEPARTMENT**

This is a classic fishing expedition. The defendant produced said documents as they relate to defendants Matarese and Brancato, the two officers directly involved in the arrest of the plaintiff.

**REQUEST #20 - DOCUMENTS LISTING ALL DEPARTMENT PERSONNEL, INCLUDING SUPPORT PERSONNEL WITH JOB TITLES AND RESPONSIBILITIES**

This request is even more over broad than request number 19, and therefore is equally objectionable, if not more. Indeed, your defendant questions the motive of the plaintiff for wanting such information when it cannot bear any possible relevance to the issues to be decided in this case.

**REQUEST #21 - DISCIPLINARY DOCUMENTS FOR DEFENDANTS MATARESE AND/OR BRANCATO WITHIN THE LAST 10 YEARS**

The defendant objected to this request based on the protections of the Rhode Island Law Enforcement Officers' Bill of Rights and the States Access to Public Records Act. R.I.G.L. §42-28.6-2(m) prohibits any public statements being made by a law enforcement agency prior to a decision being made on a pending disciplinary action against a police officer and further prohibits any public statements where the officer is found innocent. An exception exists if the officer requests a public statement or otherwise makes a public statement.

Section 38-2-2 (4)(A)(I) of the APRA provides, in pertinent part the following:

> For the purposes of this chapter, the following records shall not be deemed public: All records which are identifiable to an individual....employee, including, but not limited to, personnel,...and all personal or medical information...or information in personnel files maintained to hire, evaluate, promote, or discipline any employee of a public body; provided, however, with respect to employees, the name, gross salary range, total costs of paid fringe benefits, gross amount received in overtime and other remuneration in addition to salary, job title, job description, dates of employment and positions held with the state or municipality, work location, business telephone number, city or town of residence and date of termination shall be public.

Where the records relate to a specifically identifiable individual, the provisions of this statute have been consistently upheld. See *Edward A. Sherman Publishing Company v. Carpender,* 659 A.2d 1117 (R.I. 1995), see also *Robinson v. Malinoff,* 770 A.2d 873 (R.I. 2001); *Providence Journal Company v. Sundlun,* 616 A.2d 1131 (R.I. 1992).

The *Sherman Publishing* case addressed the clear statement of purpose of the APRA, to wit facilitating public access to governmental records which pertain to the policy-making functions of

public bodies and/or are relevant to the public health, safety and welfare while also protecting from disclosure, information about particular individuals maintained in the file of public bodies when disclosure would constitute an unwarranted invasion of personal privacy, 659 A.2d at 1119. What is clear from this case law is the clear nature of the legislative intent behind the statute and the necessity of following the strict, literal mandates thereof. *Id.* at 1119–1121.

This request is at odds with both the APRA and the LEBOR. Although, even with respect to "guilty findings," to the extent that they exist, it is hard to image how the same could ever be admissible into evidence given the strict evidentiary prohibition regarding evidence of "bad character."

**REQUEST #22 - CELL PHONE AND PAGER RECORDS USED BY DEFENDANTS MATARESE AND BRANCATO FOR THE MONTHS OF APRIL, MAY AND JUNE OF 2005**

Again, this is a pure fishing expedition and an unduly invasive one at that.

**REQUEST #23 - RECORDS OF ANY COMMUNICATIONS TO OR FROM DEFENDANTS MATARESE AND/OR BRANCATO ON MAY 9 AND MAY 10, 2005**

Defendant responded to this request, indicating that there were none. However, it should be stated that the defendant interpreted this request as seeking communications involving Matarese and Brancato, i.e. by and between those two individuals for the dates in question. If something else was intended, plaintiff ought to clarify the same so that the defendant can either further respond or object if necessary.

Respectfully submitted,
DEFENDANT,
By his Attorney,

/s/ Michael J. Colucci
Michael J. Colucci, Esq. #3302
OLENN & PENZA, LLP
530 Greenwich Avenue
Warwick, RI 02886
PHONE: (401) 737-3700
FAX: (401) 737-5499

**CERTIFICATION**

I certify that I sent a true copy of the within on 9/15/06 to:

John P. Gyorgy, Esq.
50 South Main Street
Providence, RI 02903

/s/ Michael J. Colucci