MJC:lml 6615/8 \pleading\66158MotSumETC

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| CHARLES MAUTI | : | |
| | : | |
| VS. | : | C.A. NO. 06-61T |
| | : | |
| LAUREN MATARESE, ET AL | : | |

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Now come the defendants, pursuant to Rule 56, and hereby move for summary judgment. In light of the undisputed material facts, the defendants are entitled to summary judgment as a matter of law.

In support of this motion, your defendants have attached a statement of undisputed facts and a memorandum of law.

DEFENDANTS,
By their Attorney,

/s/Michael J. Colucci, Esq. #3302
OLENN & PENZA, LLP
530 Greenwich Avenue
Warwick, RI 02886
PHONE: (401) 737-3700
FAX: (401) 737-5499

**CERTIFICATION**

I certify that I sent a true copy of the within on to:

John P. Gyorgy, Esq.
50 South Main Street
Providence, RI 02903

/s/ Michael J. Colucci, Esq.

MJC:lml 6615/8 \pleading\66158MemLaw

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| CHARLES MAUTI | : | |
| | : | |
| VS. | : | C.A. NO. 06-61T |
| | : | |
| LAUREN MATARESE, ET AL | : | |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

Michael J. Colucci, Esq. #3302
OLENN & PENZA, LLP
530 Greenwich Avenue
Warwick, RI 02886
PHONE: (401) 737-3700
FAX: (401) 737-5499

# TABLE OF CONTENTS

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

I. DESCRIPTION OF MOTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II. STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

III. STATEMENT OF FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

IV. ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

a. Related Crimes Defense. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
“Qualified Immunity-Other Grounds”. . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
b. Negligent Training.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
c. Intentional Infliction of Emotional Distress. . . . . . . . . . . . . . . . . . . . . . . . . . . 18

V. CONCLUSION.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

# TABLE OF AUTHORITIES

## CASES

*Amsden v. Moran*, 904 F.2d 748 (1st Cir. 1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Anderson v. Craighton*, 483 U.S. 635 (1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*City of Los Angeles v. Heller*, 106 S. Ct. 1571 (1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Cruz v. Town of North Providence*, 833 A.2d 1237 (R.I. 2003). . . . . . . . . . . . . . . . . . . . . . . . 15

*DiBattista v. State*, 808 A.2d 1081 (R.I. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Ensey v. Culhane*, 727 A.2d 687 (R.I. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Floyd v. Farrel*, 765 F.2d 1. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 10

*Giroux v. Murphy*, 88 R.I. 280 (1959). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Graham v. Connor*, 109 S. Ct. 1865 (1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Harlow v. Fitzgerald*, 457 U.S. 800 (1982). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 13

*Hatch v. Town of Middletown*, 311 F.3d 83 (1st Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Haworth v. Lannon*, 813 A.2d 62 (R.I. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Hegarty v. Somerset County*, 53 F.3d 1367 (1st Cir. 1995) [6]. . . . . . . . . . . . . . . . . . . . . . . . 13

*Jalowy v. The Friendly Home, Inc.*, 818 A.2d 698 (R.I. 2003). . . . . . . . . . . . . . . . . . . . . . . . 18

*Knudsen v. Hall*, 490 A.2d 976 (R.I. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16

*Monell v. City of New York Department of Social Services*,
463 U.S. 658 (1978). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Orzechowski v. State*, 485 A.2d 545 (R.I. 1984). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*O'Brien v. State*, 555 A.2d 334 (R.I. 1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Paula Dove Jennings v. Pare*, CA 03-572-T . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Pontbriand v. Sundlun*, 699 A.2d 856 (R.I. 1977). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Ryan v. State*, 420 A.2d 841 (R.I. 1980). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16

*Saucier v. Katz*, 121 S. Ct. 2151 (2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 11-13

*Savard v. Rhode Island*, 338 F.3d 23 (1st Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Sheehy v. Town of Plymouth*, 191 F.3d 15 (1st Cir. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . 2, 7, 8

*State v. Bjerk*, 697 A.2d 1069 (R.I. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

*State v. DeMasi*, 419 A.2d 285 (R.I. 1980). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*State v. Giragosian*, 107 R.I. 657 (1970). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*State v. Maloney*, 109 R.I. 166 (1971). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

*State v. Rattenni*, 117 R.I. 221 (1976). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

*State v. Scurry*, 636 A.2d 719 (R.I. 1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Torres v. Damicis*, 853 A.2d 1233 (R.I. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*U.S. v. McCarthy*, 77 F.3d 522 (1st Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Verity v. Danti*, 585 A.2d 65 (R.I. 1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

**STATUTES**

42 USC § 1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2

R.I.G.L. § 31-10-1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3-7, 13, 14

R.I.G.L. § 12-7-3. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

R.I.G.L. § 12-7-5. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7, 12, 14

R.I.G.L. § 31-11-18. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4-8, 14

R.I.G.L. § 31-27-13. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 13

**RULES**

Fed. R. Civ. P. 56(c). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

**TREATISES**

Restatement (2d.) of Torts. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

## I. DESCRIPTION OF MOTION

This is a motion for summary judgment filed by the defendants, Lauren Matarese, Frank Brancato, Edward Mello and the Town of Westerly.

The plaintiff has styled his complaint as a Section 1983 action based on the plaintiff's arrest on May 10, 2005 for a minor traffic violation classified as a civil violation under Rhode Island law. Plaintiff's complaint contains 5 counts. Counts 1 and 2 seek redress under 42 USC § 1983 for the alleged unlawful seizure. Count 3 contains a state law claim for false arrest. The next count (mistakenly labeled as Count 5) alleges negligent training and supervision by defendant Mello, and the final count alleges intentional infliction of emotional distress.

Your defendant seeks summary judgment on all counts. As to the unlawful seizure counts (both federal and state) this motion is based primarily on two principal theories. First, the "related crimes defense" recognized both by this Circuit and the State of Rhode Island. Second, and to the extent necessary, your defendants rely generally on the doctrine of Qualified Immunity.

## II. STANDARD OF REVIEW

The standard of review is well known to this Court and needs only brief mention here. Summary judgment is warranted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

Fed. R. Civ. P. 56(c). Qualified Immunity is considered an entitlement not to stand trial or face the burdens of litigation and is therefore quite appropriate for consideration early in the proceedings "so that the costs and expenses of trial are avoided where the defense is dispositive", *Saucier v. Katz*, 121 S. Ct. 2151 (2001). Normal summary judgment standards are still employed where Qualified Immunity is raised by pre-trial motion, *Amsden v. Moran*, 904 F.2d 748, 752 (1st Cir. 1990). This court must "review the record in a light most favorable to the party opposing the summary judgment and . . . indulge in all reasonable inferences in that party's favor." *Sheehy v. Town of Plymouth*, 191 F.3d 15, 18-19 (1st Cir. 1999).

## III. STATEMENT OF FACTS

This matter arises out of a motor vehicle stop occurring on May 10, 2005 in Westerly, Rhode Island. Just prior to the stop, the plaintiff, Charles Mauti, had been traveling in the area of Grove Avenue. Road construction was ongoing in the area. At or about the same time, defendant, Lauren Matarese (Matarese) was traveling on the same roadway. Matarese is a captain with the Westerly Police Department and had just finished fueling her police vehicle (unmarked) and was on her way to the police station to begin her tour of duty. As she passed through the site, a construction worker began motioning to her about a vehicle (the plaintiff's vehicle) that had just passed through. The worker's hand movements and body language was suggestive of some sort of problem or potential infraction that may have occurred with Mauti's operation of his motor vehicle. Matarese then initiated a motor vehicle stop of the

plaintiff. As part thereof, Matarese requested the plaintiff's license and registration.

Mauti was a resident of the State of Rhode Island for several years as of the date of this motor vehicle stop. In fact, he had been employed as the building official from the neighboring town of Hopkinton, Rhode Island and had been since the late 1990's. As such, his name was recognized by Matarese when he produced a license bearing his name, but issued from the State of Arizona. Matarese advised the plaintiff of the requirement for Rhode Island residents to be licensed by the State of Rhode Island and inquired as to the status of his Rhode Island license. Mauti gave various reasons for not having a Rhode Island license and ultimately confirmed that he had never applied for one. He was then placed under arrest by Captain Matarese. Co-defendant, Frank Brancato, a patrolman with the Westerly Police Department, was dispatched to the scene and transported the plaintiff to the police station. Identification processing was accomplished and the plaintiff was released to appear in the local district court on May 20, 2005. Matarese had originally intended to charge the plaintiff under RIGL § 31-11-18, but ultimately decided to charge him under RIGL § 31-10-1 as that dealt more specifically with his residency issue and would be easier for the plaintiff to resolve by simply getting a Rhode Island license before his arraignment date.

As a "professional courtesy" Matarese then drove Mauti to the local registry of motor vehicles to assist him in getting a Rhode Island license. She advised him that if he could obtain a Rhode Island license prior to his court appearance, she would be able to dismiss the charge. Mauti was able to obtain a temporary Rhode Island permit, after which, Mataresi

drove him back to his vehicle where they parted company.

On May 20, 2005, the plaintiff appeared for his arraignment in the 4th Division District Court. Although Matarese was prepared to recommend dismissal of the charge (because Mauti had obtained the Rhode Island operator's permit) the plaintiff, through defense counsel, chose to challenge the jurisdiction of the District Court over the charge in question. That led to a discussion with Judge Erickson, a transcript of which has been provided with this motion. The long and the short of that discussion was to the effect that Judge Erickson disagreed with the assertion that his court did not have jurisdiction over "no license" cases. While it may have been that the "wrong statute" may have been cited (31-10-1 as opposed to 31-11-18), Judge Erickson was of the opinion that "clearly, driving without a license is within the jurisdiction of this Court," App. 3 at p. 3 and 6-8. He declined to rule on the motion without affording the Town of Westerly an opportunity to respond to the jurisdictional issue raised and he continued the matter for one week to accomplish that task. Ultimately, the matter was dismissed and Mauti was ordered to pay court costs and a payment to the Victim's Indemnity Fund.

## IV. ARGUMENT

### a. Related Crimes Defense

The crux of the plaintiff's complaint is that he was arrested and charged with violating R.I.G.L. 31-10-1, a "civil" violation, App. 4. That statute requires Rhode Island residents to obtain an operator's license before operating a vehicle on Rhode Island highways. Further,

they must obtain the license within thirty (30) days of becoming a resident, with residency being defined in R.I.G.L. 31-1-18, App. 5. Plaintiff does not dispute that he did not have a Rhode Island license and that he had been a Rhode Island resident (as so defined) for more than thirty (30) days. Indeed, the plaintiff had been a resident for several years. In other words, the plaintiff does not dispute that he was in violation of 31-10-1. Rather, he asserts that since the legislature has made violation of this section a civil infraction, as opposed to a misdemeanor or something more, then Matarese had no valid grounds to arrest him.

Title 31 of the Rhode Island General Laws deals with the motor vehicle code, so-called. R.I.G.L. 31-10-1, does not carry its own separate penalty. Under such circumstances, the controlling penalty statute is R.I.G.L. 31-27-13, App. 6. This statute makes it a civil violation for any person to violate the provisions of chapters 1 through 27 or chapter 34, of title 31, unless the violation is elsewhere declared to be a felony or misdemeanor or unless the offense is punishable by a fine of more than $500 or by imprisonment.

As such, and after exhaustive research of the motor vehicle code, the defendants will concede that violation of 31-10-1 is, at most, a civil violation. However, it should be noted that for nearly fifty (50) years, it was a misdemeanor to violate 31-10-1. R.I.G.L. 31-27-13 was first enacted in 1950 and read as follows:

> "(a) it is a misdemeanor for any person to violate any other provisions of chapters 1 to 27, inclusive, or chapter 34 of this title, unless such violation is by said chapters or other law of this state declared to be a felony."

R.I.G.L. 31-27-13 was amended however, in 1999 (and again in 2002 to provide for the civil

violation penalty now encompassed by 31-27-13, see public law 1999, chapter 218, article 6, section 14, enacted 6/30/99, App. 7.

For purposes of the Related Crimes Defense, the inquiry need not end there. R.I.G.L. 31-11-18 (App. 8) provides, in part, that (a) any person who drives a motor vehicle on any highway of this state who never applied for a license . . ., or who otherwise drives without a license, shall be guilty of a misdemeanor.

It is not disputed that at the time of his arrest, the plaintiff had never applied for a Rhode Island license and was driving without one.[1] The fact that he had a license from the State of Arizona is of no consequence. The Rhode Island licensing statute clearly contemplates and mandates Rhode Island residents to be in possession of a valid Rhode Island operator's license ***and only a Rhode Island license***. Indeed, 31-10-1 not only requires a resident of thirty (30) days to obtain a Rhode Island license, it also mandates that said person must surrender all valid licenses from any other jurisdiction in order to obtain his Rhode Island license and further provides that "No person shall be permitted to have more than one valid operator's license at any time". As such, the very same conduct that the plaintiff was arrested for amounts, at least arguably, to a violation of 31-11-18, a misdemeanor.

There is no question that a police officer, in the State of Rhode Island, may arrest,

---

[1] According to Matarese, the original basis for the arrest included 31-11-18, see Matarese affidavit at paragraph 9. However, so as not to create a possible factual dispute, this argument is based on the undisputed charge under 31-10-1.

without warrant, for violation of a misdemeanor or petty misdemeanor, see R.I.G.L. 12-7-3. Indeed, in *State v. Giragosian*, 107 R.I. 657 (1970), the Rhode Island Supreme Court upheld as valid, an arrest for driving without a license and they specifically referred to R.I.G.L. 31-10-1 (which at the time, was a misdemeanor), *Id.* at 662.

Additionally, under the arrest powers for the State of Rhode Island, R.I.G.L. 12-7-5 provides as follows:

> "**Arrest on improper ground."** - if a lawful cause of arrest exists, the arrest shall be lawful even though the officer made the arrest on an improper ground".

Accordingly, Rhode Island law provides for a statutory "related crimes defense". As such, while Matarese may have used an improper ground (31-10-1) to support her probable cause for the arrest of the plaintiff, ample probable cause lies under 31-11-18 for the arrest of the plaintiff. Therefore, per R.I.G.L. 12-7-5, the plaintiff's arrest, must, as a matter of law, be considered lawful.

On the Federal level, the related crimes defense had been recognized by several circuits and was first recognized by this Circuit in 1999 in the matter *Sheehy v. Town of Plymouth*, 191 F.3d 15, 19-20 [5-6] [2] (1st Cir., 1999). When that defense applies, even when there is no probable cause to arrest a plaintiff for the crime charged, proof of probable cause to arrest a plaintiff for a related offense is a defense which will entitle the defendant police officer to

---

[2] References to [ ] are in reference to the "West Law" printed page.

qualified immunity, *Id*. at 17 [3]. *Sheehy* spoke of the long-standing rule of Qualified Immunity that an arrest is deemed objectively reasonable unless there clearly was no probable cause at the time the arrest was made, *Id*. at 19 [5], see also *Floyd v. Farrel*, 765 F.2d 1, 6 (an officer's conduct would be considered objectively reasonable so long as the presence of probable cause was at least arguable . . . there could be no liability under section 1983 if the presence of probable cause was questionable).

The related crimes defense asks whether the conduct which served as the basis for the charge, for which there was no probable cause, could, in the eyes of a similarly situated reasonable police officer, also have served as the basis for a charge for which there was probable cause, *Sheehy* at 19 [5]. Essentially, there are two requirements to sustain the defense. First, the crime charged and the crime offered as justification for the arrest must relate to the same conduct, *Id.* at 19-20 [5]. Second, as a corollary, the two crimes must share similar elements or be directed generally at prohibiting the same type of conduct, *Id*.

Going further, the *Sheehy* court stated that an officer's erroneous legal description of the basis for the arrest should not expose her to liability if another police officer would have concluded there was probable cause to arrest for a related offense on the basis of the same conduct, *Id.* at 20 [5].

In the case at bar, there can be no question that the very same conduct for which the plaintiff was arrested (not having a Rhode Island license nor having ever applied for one) would, at least arguably, amount to probable cause to arrest him for violation of R.I.G.L. 31-

11-18 - the misdemeanor offense. Indeed, Judge Erickson, in discussing the plaintiff's jurisdictional argument stated, among other things, "I do 25 of these a week . . . well, that's because they are charged under the wrong statute . . . clearly, driving without a license is within the jurisdiction of this court," App. 3 at page 3. Moreover, Judge Erickson went on to specifically cite 31-11-18, stating that it is not limited to just someone who drives on a suspended license, as it also references someone who drives without a license. *Id*. at p. 6-8.

It is anticipated that the plaintiff may argue that no probable cause ever existed to initiate the motor vehicle stop in the first instance and therefore this Court should not even consider the related crimes defense. Such an argument lacks merit for a number of reasons. First, full probable cause is not needed to initiate a motor vehicle stop. Rhode Island law permits officers to stop motor vehicles for investigatory purposes where reasonable suspicion exists that the vehicle, or its occupants have been engaged in any type of criminal activity, *State v. DeMasi*, 419 A.2d 285 (R.I. 1980). This is consistent with Federal law which speaks in terms of reasonable and articulable suspicion as being all that is necessary to initiate brief investigation, *U.S. v. McCarthy*, 77 F.3d 522, 529 (1st Cir. 1996). In the case at bar, Captain Matarese readily meets that standard, given the construction worker's actions in drawing her attention to the plaintiff's vehicle as it passed through an active construction zone.

Moreover, and in addition to the same, Rhode Island law has long-permitted routine traffic stops for the purpose of checking for a proper license and registration, see *State v. Rattenni*, 117 R.I. 221, 224 (1976); *State v. Maloney*, 109 R.I. 166, 173 (1971). In *Rattenni*,

the police had received a tip that a suspect was in possession of a handgun and he was driving a car that matched the description. He was pulled over and asked to produce his license and registration. When he opened the glove compartment, he had exposed a gun. Mr. Rattenni moved to quash the finding of the gun as being an invalid search. The court ruled that the tip was sufficient to warrant a brief investigatory stop given the information that they had received. **Moreover, it is completely within an officer's power to stop a car for a license and registration check**, **117 R.I. at 224**. In *Maloney*, the court stated that it was "the duty of officers to make such checks to insure compliance with the licensing law to the same extent as they are charged with enforcing compliance with all the laws of this state. Inconvenience to the operator is a part of the price he pays for the maintenance of safe and orderly travel on the highways.", 109 R.I. at 173.

It is also anticipated that the plaintiff may point to the fact that on the day prior to his arrest, someone at the Westerly Police Department ran a "RILETS" check to determine his license and/or registration status. However, such an argument is not material to defendants' entitlement to summary judgment. An officer's conduct under section 1983 is judged by its objective reasonableness. His ulterior motive or subjective state of mind is not to be considered in judging the reasonableness of his decision, *Floyd v. Farrel*, 765 F.2d 1. As the U.S. Supreme Court has stated, "good intentions will not make a bad arrest good and bad intentions will not make a good arrest bad", *Graham v. Connor*, 109 S. Ct. 1865, 1872 (1989).

This is entirely consistent with Rhode Island state law on the subject, see *State v. Bjerk*, 697 A.2d 1069 (R.I. 1997). In *Bjerk*, the police had received a tip that Mr. Bjerk may have been driving his vehicle while intoxicated. The dispatcher ran his license plate and determined that the registration had been previously suspended. While the court agreed that the scant information received with the "tip" would not have supported the probable cause to initiate a stop, the information about the suspended registration amounted, not only to reasonable suspicion of criminal activity, but probable cause that would justify a full stop, *Id.* at 1072 [5]. From that point on, any evidence obtained pursuant to that lawful stop, such as the odor of alcohol, slurred speech, etc. would support an arrest for suspicion of driving while under the influence, *Id.*

The significance here is that the *Bjerk* court stated that a computer check of the defendant's license plate was not a Fourth Amendment search. Since motor vehicle registration information is entirely within the control and custody of the department of motor vehicles, there is no expectation of privacy and the police officer did not conduct an invalid search by running a computer check on the vehicle's license plates, *Id.* at 1072-1073 [5-6]. On the issue of pretext - the court went on to state that the subjective intention of the officer played no role in the calculus, *Id.* As long as probable cause was present, it did not matter that the police officer may have had a dual motive, *Id.*, see also *State v. Scurry*, 636 A.2d 719, 723 [5] (R.I. 1994).

**"Qualified Immunity-Other Grounds"**

The recent Supreme Court case of *Saucier v. Katz* clarified the current approach to be taken for the determination of whether or not Qualified Immunity shall apply. It noted that the requisites of a Qualified Immunity defense must be considered in the proper sequence, 121 S.Ct. at 2155 [6]. The first question is whether or not a constitutional right would have been violated from the facts alleged, i.e. whether there is a constitutional violation on the merits, *Id*. at 2156 [6]. If no constitutional violation could be shown, then there is no need for further inquiries concerning Qualified Immunity, *Id*. [7]. In the case at bar, the Rhode Island statutory "Related Crimes Defense", (R.I.G.L. 12-7-5) legitimizes the arrest of the plaintiff and therefore, there is no constitutional violation "on the merits" and the inquiry can stop here. To the extent that the plaintiff seeks recovery on her §1983 claim from the town, the same would not lie since respondeat superior liability does not exist for such claims. *Monell v. City of New York Department of Social Services*, 463 U.S. 658 (1978). Nor can a municipality be liable where underlying conduct of its subordinate officers is not unconstitutional, *City of Los Angeles v. Heller*, 106 S. Ct. 1571 (1986).

Should this Court disagree, the next sequential step, per *Saucier*, is to ask whether the right was clearly established, 121 S.Ct. at 2156 [7]. "This inquiry, it is vital to note, must be undertaken in light of the specific context of the case, not as a broad general proposition", *Id*. The right allegedly violated must have been clearly established in a more particularized, and hence more relevant sense, *Id*. The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right, *Id*. Hence, the

third and dispositive inquiry is as to ask whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted, *Id*. See also *Savard v. Rhode Island*, 338 F.3d 23, 27 (1st Cir. 2003).

The goal of the Qualified Immunity Doctrine must be kept in mind, for it exists to protect government officials performing discretionary functions from constant second guessing and exposure to liability for damages. The goal of Qualified Immunity is to "avoid excessive disruption of government and permit the resolution of many insubstantial claims on summary judgment", *Saucier* at 2156 [7] citing *Harlow v. Fitzgerald*, 457 U.S. 800 (1982).

> "When government officials abuse their offices, actions for damages may offer the only realistic avenue for vindication of constitutional guarantees . . . on the other hand, permitting damages suits against government officials can entail substantial social costs, including the risk that fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties. Our cases have accommodated these conflicting concerns by generally providing government officials performing discretionary functions with a Qualified Immunity, shielding them from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Hegarty v. Somerset County*, 53 F.3d 1367, 1373 (1st Cir. 1995) [6], citing *Anderson v. Craighton*, 483 U.S. 635, 638 (1987).

The Qualified Immunity inquiry does not depend on whether the alleged conduct was, in actuality, found to be constitutional but, rather, allows for the "inevitable reality" that law enforcement officials will sometimes reasonably but mistakenly conclude that their conduct is constitutional and they, like other officials who act in ways they reasonably believe to be

lawful, should not be held personally liable, *Id*. at 1373 [6]. Qualified Immunity sweeps "so broadly that all but the plainly incompetent, or those who knowingly violate the law, are protected from civil right suits for money damages", *Id*.

In the case at bar, violation of R.I.G.L. 31-10-1 was, for some 49 years (until the 1999 amendment to 31-27-13), in fact, a misdemeanor. Matarese was first sworn in as a police officer in June of 1982. Hence, for the first 17 years of her career, the plaintiff's infraction would have been a misdemeanor under 31-10-1. Admittedly, (see Matarese affidavit) after moving into the higher ranks of the department, she became less involved with everyday traffic stops for motor vehicle infractions. However, as the department's prosecution officer, she often heard "no license cases" being adjudicated in the State District Court. This is entirely consistent with Judge Erickson's own words as noted earlier in this memorandum. Matarese also recalls either a seminar or an administrative order from Chief Judge DeRobbio, of the State District Court, from the late 1990's (obviously before the 1999 amendment) whereby it was noted that "no license cases" could be charged either under R.I.G.L. 31-10-1 or 31-11-18, both being misdemeanors. Accordingly, if there were ever a "textbook" case for Qualified Immunity, this case would certainly "fit the bill", as her mistake in the choice of which statute to charge under, cannot, under these circumstances, be considered unreasonable or, one that "none but the plainly incompetent" would have made.

## V. STATE LAW CLAIMS

### a. False Arrest

R.I.G.L. 12-7-5 provides for the same "related crimes" defense with respect to the plaintiff's state law claim for false arrest. Moreover, the Qualified Immunity Doctrine, while often cited as a Federal doctrine, is looked upon favorably by the State of Rhode Island as this Court has pointed out in the matter of *Paula Dove Jennings v. Pare*, CA 03-572-T (Memorandum and Order of August 24, 2005) citing to the Rhode Island Supreme Court decisions of *Pontbriand v. Sundlun*, 699 A.2d 856, 867 (R.I. 1977), *Ensey v. Culhane*, 727 A.2d 687, 690 (R.I. 1999), and the First Circuit's decision in *Hatch v. Town of Middletown*, 311 F.3d 83 (1st Cir. 2002) which concluded that the applicability of the Federal Doctrine of Qualified Immunity to state law claims "is well-grounded in the law of Rhode Island.", *Id.* at 90.

Hence, for the same reasons argued by your defendants with regard to summary judgment on the Federal Unlawful Seizure Claim, plaintiff's State Law claim for false arrest must likewise fail. Again, to the extent that the plaintiff seeks respondeat superior liability against the Town or Chief, the same does not exist under Rhode Island law, *Giroux v. Murphy*, 88 R.I. 208, 284 (1959); *Cruz v. Town of North Providence*, 833 A.2d 1237 (R.I. 2003).

**b. Negligent Training**

The plaintiff's negligent training count is directed toward defendant, Mello, the current chief of the Westerly Police Department and chief at the time of this incident. As a matter of law, such a claim cannot be sustained based on Rhode Island's long standing Public Duty

Doctrine. Under this doctrine, a plaintiff may only recover against the State or one of its municipalities (and public officials) if he could show a breach of some special duty owed to them in their individual capacities and not merely a breach of some obligation owed to the general public, *Ryan v. State*, 420 A.2d 841, 843 (R.I. 1980), see also *Knudsen v. Hall*, 490 A.2d 976 (R.I. 1985) accordingly, under the Public Duty Doctrine, municipalities and their officials have immunity from tort liability which arise out of their discretionary governmental actions that, by their nature, are not ordinarily performed by private citizens, *Haworth v. Lannon*, 813 A.2d 62, 64 (R.I. 2003).

There are a few exceptions to the Public Duty Doctrine. The first one is where the duty arose from a proprietary function, *O'Brien v. State*, 555 A.2d 334, 336 (R.I. 1989). In *O'Brien*, the plaintiff tripped in a state park and alleged negligence in the manner in which the state maintained the grounds. There, the Court declined to apply the Public Duty Doctrine since it felt that the state, in the performance of its maintenance obligations, was performing a function identical to that which a private person might perform, *Id.* at 337 and 338.

A second exception relates to the existence of a special duty owed to the plaintiff in particular, as opposed to the public generally. This goes back to the original annunciation of the doctrine in the *Ryan* and *Knudsen* cases. The immunity is inapplicable when a municipality has assumed a special duty "owing to a specific identifiable individual", *Orzechowski v. State*, 485 A.2d 545, 548 (R.I. 1984). That special duty can be established when a plaintiff has had prior contact with state or municipal officials, who then knowingly

embark on a course of conduct that endangers the plaintiff, or when a plaintiff has otherwise specifically come within the knowledge of the officials so that the injury to that particularly identified plaintiff can be or should have been foreseen, *Torres v. Damicis*, 853 A.2d 1233 (R.I. 2004) quoting *Kundsen*, 490 A.2d at 978.

The only other recognized exception is known as the egregious conduct exception. This exception first arose in the matter of *Verity v. Danti*, 585 A.2d 65 (R.I. 1991). In *Verity*, the plaintiff was walking on a sidewalk that was blocked by a large tree, forcing her to walk into the street to get around the tree. As a result, she was struck by a passing vehicle and injured, *Id*. at 66. In declining to invoke the Public Duty Doctrine, the Court reasoned that when the State has knowledge that it has created a circumstance that forces and individual into a position of peril and subsequently chooses not to remedy that situation, the Public Duty Doctrine will not shield the State from liability, *Id*. at 67.

It can readily be seen that none of these exceptions apply to the plaintiff's allegations. He does not, and cannot, allege that the Town of Westerly and/or its police chief/department owed him, as opposed to the general public, a special duty. The training of a police department is not something ordinarily engaged in by private persons. Finally, the alleged failure to train properly in this area of arrest powers, is certainly not something contemplated by the egregious conduct exception. Accordingly, this count must also fail.

**c. Intentional Infliction of Emotional Distress**

The plaintiff's final state law claim seeks recovery for the tort of Intentional Infliction

of Emotional Distress. This tort requires a showing of "extreme and outrageous conduct on the part of the defendant", *DiBattista v. State*, 808 A.2d 1081, 1088 (R.I. 2002). The Rhode Island Supreme Court recently explained the heightened requirement by adopting the position of the Restatement (2d.) of Torts. "It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by malice or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort . . . the conduct (must be) so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community", *Jalowy v. The Friendly Home, Inc.*, 818 A.2d 698, 707 (R.I. 2003). Moreover, this question of whether the conduct amounts to as much, is a matter of law to be decided by the Court, *Id*.

**V. CONCLUSION**

For the foregoing reasons, your defendants respectfully request that summary judgment enter in their favor.

DEFENDANT,
By Attorney,

/s/ Michael J. Colucci
Michael J. Colucci, Esq. #3302
OLENN & PENZA, LLP
530 Greenwich Avenue
Warwick, RI 02886
PHONE: (401) 737-3700
FAX: (401) 737-5499

**CERTIFICATION**

I certify that I sent a true copy of the within on to:

John P. Gyorgy, Esq.
50 South Main Street
Providence, RI 02903

/s/ Michael J. Colucci, Esq.

MJC:lml 6615/8 \pleading\66158Stmnt

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

CHARLES MAUTI :
:
VS. : C.A. NO. 06-61T
:
LAUREN MATARESE, ET AL :

**DEFENDANTS' STATEMENT OF UNDISPUTED MATERIAL FACTS**

Now come the defendants, in conjunction with their motion for summary judgment, and submit the following statement of undisputed material facts:

1. The plaintiff, Charles Mauti, is a resident of the State of Rhode Island and is employed as the building official for the Town of Hopkinton, Rhode Island.

2 The plaintiff has been employed in that capacity since 1998 and has been a resident of the State of Rhode Island for at least that amount of time, Cmplt at ¶ 9.

3. On May 10, 2005, the plaintiff was operating a motor vehicle on or about Grove Avenue in the Town of Westerly, Rhode Island. Construction work was being performed at that location at said time.

4. As he was so operating his vehicle, the plaintiff was not in possession of a Rhode Island driver's license and he was not a licensed Rhode Island driver.

5. The plaintiff did have a license which he obtained in the State of Arizona, where he had lived prior to moving to Rhode Island, Cmplt at ¶ 19.

6. Prior to that day, the plaintiff had never applied for a Rhode Island operator's license.

7. Defendant, Lauren Matarese (Matarese) was, on said date, a captain with the Westerly Police Department.

8. Defendant, Frank Brancato (Brancato) was, on said date, a patrolman with the Westerly Police Department.

9. Defendant, Edward Mello (Mello) was, on said date, the chief of the Westerly

Police Department.

10. Shortly before 7:30 a.m. on said date, Matarese, while in uniform, was operating an unmarked police vehicle through the said construction zone after having fueled the vehicle at the gas pumps and while on her way to the police station, (see App. 1, Affidavit of Matarese).

11. As she was passing by, one of the construction workers motioned to her, with hand gestures, to turn her attention toward the plaintiff's vehicle, Id;

12. Given the actions of the construction worker, Matarese suspected that there may have been some type of legal problem with the operation of his vehicle in that construction zone area and therefore, she proceeded to initiate a motor vehicle stop of the plaintiff's vehicle, Id.

13. Matarese requested production of the plaintiff's license and registration. The plaintiff produced an Arizona driver's license and a registration belonging to some type of trailer, not the vehicle he was operating, Id.

14. After some short discussion concerning the reasoning behind the plaintiff's lack of a Rhode Island license, Matarese decided to arrest him for operating without a Rhode Island license, Id.

15. Matarese requested a regular marked patrol unit in order to transport the plaintiff to the police station. Officer Brancato arrived in response thereto and transported the plaintiff to the police station, Id.

16. Plaintiff's identity was confirmed and documented at the police station and, after being finger printed and photographed, he was issued a summons to appear in the state district court for violation of RIGL 31-10-1, Id.

17. As a professional courtesy, Matarese then drove the plaintiff to the local registry of motor vehicles where he could apply for a Rhode Island operator's license, while advising him that if he were to that and furnish proof of the same at his appearance date, she would recommend dismissal of the charge, Id.

18. The plaintiff surrendered his Arizona license to the Rhode Island Registry of Motor Vehicles and obtained a temporary driving permit from the State of Rhode Island, cmplt at ¶ 30.

19. The plaintiff appeared at his arraignment on the underlying charge, on May 20,

2005, represented by Attorney Lise J. Gescheidt.

20. Attorney Gescheidt confirmed that "Lauren" (defendant, Matarese) was "going to dismiss this case because my client did obtain a Rhode Island license" but Attorney Gescheidt moved to challenge the jurisdiction of the District Court over the charge, (see App. 2, 5/23/05 letter of Attorney Gescheidt).

21. State District Court Judge Stephen P. Erickson, did not agree with the jurisdictional argument that was raised noting, at one point, that perhaps Mr. Mauti may have been charged under the wrong statute but that "clearly, driving without a license is within the jurisdiction of this court" and ultimately referring to RIGL 31-11-18, see App. 3, (transcript of proceedings before Judge Erickson on 5/20/05) at pages 3 and 6-8. Id.

22. On May 27, 2005, the underlying charge was dismissed and the plaintiff was ordered to pay court costs and a payment into the Victim's Indemnity Fund.

DEFENDANTS,
By their Attorney,

/s/Michael J. Colucci, Esq. #3302
OLENN & PENZA, LLP
530 Greenwich Avenue
Warwick, RI 02886
PHONE: (401) 737-3700
FAX: (401) 737-5499

**CERTIFICATION**

I certify that I sent a true copy of the within on to:

John P. Gyorgy, Esq.
50 South Main Street
Providence, RI 02903

/s/Michael J. Colucci, Esq.