# Exhibit M

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

CHARLES MAUTI :
VS. : C.A. NO.: 06-61T
LAUREN MATARESE, ET AL. :

DEPOSITION OF STANO TROMBINO, a Witness in the above-entitled cause, taken on behalf of the Plaintiff, before Barbara Warner, Notary Public in and for the State of Rhode Island, at the offices of Noel & Gyorgy, 50 South Main Street, Providence, RI, on September 29, 2006 at 11:55 A.M.

PRESENT:
FOR THE PLAINTIFF............. NOEL & GYORGY, LLP
BY: JOHN R. GYORGY, ESQUIRE

FOR THE DEFENDANT............. OLENN & PENZA, LLP
BY: MICHAEL COLUCCI, ESQUIRE

ALLIED COURT REPORTERS
115 PHENIX AVENUE
CRANSTON, RI 02920
401-946-5500



c5e65351-ff57-4c8d-b7aa-8efb00e25dad

I N D E X

WITNESS PAGE
STANO TROMBINO
EXAMINATION BY MR. GYORGY................ 3

E X H I B I T S

NO EXHIBITS OFFERED

if we need transports to court. There would be no one else in the cell block and that was it.

Q. Did he tell you what Mr. Mauti was arrested for?

A. I am sure he must have.

Q. Do you remember what Mr. Mauti was arrested for?

A. It was a license violation, if I recall.

Q. Do you remember the nature of the license violation?

A. I am not sure from that point or from the time since then I learned it was for not having a license. I did not get too involved with because it had nothing to do with our shift.

Q. Did Corporal LaChapelle tell you anything? Did he tell you who had arrested Mr. Mauti?

A. I believe he told me Officer Brancato was processing him and the Captain had arrested him.

Q. Did he say anything to you about what Mr. Mauti had been charged with or was going to be charged with?

A. I believe it was just a license violation. If he was charged, it was for not having a license.
Q. Do you remember if he was charged with not having a license or for not having a Rhode Island license?
A. That was a while ago. If he was under arrest, I would have assumed it was for not having a license.
Q. For not having a license; is that correct?
A. That would be the way I would interpret that, yes.
Q. Why do you say that if he was under arrest, you would assume he was charged with having no license as opposed to not having a Rhode Island license?
A. Because not having a license is an arrestable offense and that would be the reason somebody would be in the station being processed.
Q. Are you familiar with -- whether you know the statutory section or not, are you familiar with the motor vehicle code offense of not having a Rhode Island license or not getting a Rhode Island

license within 30 days after moving to Rhode Island?
A. I am familiar with generally the violation of not changing your address on your license.
Q. Do you know whether or not it is a violation of the motor vehicle code for someone carrying a valid out-of-state license not to replace that with a Rhode Island license within a month after moving to the State of Rhode Island?
A. My interpretation of that law is that it is a traffic violation to not change your address and it would be a court appearance.
Q. Did you say a traffic violation?
A. Yes.
Q. And it would be a court appearance, what are you referring to? Are you saying you would issue a ticket?
A. That's correct.
Q. And the person would have to show up at the Traffic Tribunal?
A. Yes.
Q. Is that an arrestable offense?

A. No, it is not.
Q. Do you know -- you learned about Mr. Mauti's arrest at change of shift on the day it happened; is that correct?
A. That's correct.
Q. Did you discuss Mr. Mauti's arrest with anybody after that conversation at change of shift on the day of the arrest?
A. No, I didn't.
Q. Did you talk to Corporal LaChapelle at any point subsequent to that time about Mr. Mauti's arrest?
A. Only as of late because of these depositions.
Q. Did you say only as of late because of the depositions?
A. Yes.
Q. When did you talk to Corporal LaChapelle about Mr. Mauti's arrest in connection with these depositions?
A. When he came back from his.
Q. Was counsel present at the discussion?
A. No.
Q. Can you tell me did Corporal LaChapelle tell you about the deposition?

LaChapelle, did you discuss Mr. Mauti's arrest with anyone else?
A. No.
Q. Is that true from the day of his arrest last May up until the present, other than the discussion you mentioned with Corporal LaChapelle about the deposition?
A. By discussion, do you mean getting into the details of the arrest or a firsthand discussion, no, I did not discuss that with anyone because I have no interest in it.
Q. If you start to ask me a question in response to my question, I know that it was not clear, so let me back up. Did you ever talk to anyone about whether the offense with which he was charged was an arrestable offense?
A. I am sure at some point I discussed that with Sergeant Lacey.
Q. Do you remember when that was?
A. Not that I can give you a specific time.
Q. Do you remember what Sergeant Lacey said about whether the offense with which Mr. Mauti was charged was an arrestable

offense?
A. I believe when I discussed it with him, I gave him my interpretation of what I thought the proper charge would have been. It was just an error in the charge and that was it.
Q. What was your opinion of what the proper charge should have been?
A. A Rhode Island Traffic Tribunal change of license violation.
Q. The Rhode Island Traffic Tribunal change of address license violation is not an arrestable criminal offense; is that correct?
A. That's correct.
Q. Do you remember what Sergeant Lacey said in response?
A. No. I believe I just made the statement that it would be my opinion. I don't recall his response.
Q. Did you ever express that view to anyone else other than Sergeant Lacey?
A. No, I didn't.
Q. Did anyone else ever ask you what your view was of whether the proper charge was put

against Mr. Mauti?
A. People discussed that at roll call, but I never got involved in the discussions so I never gave my opinion on it.
Q. Do both you and Sergeant Lacey conduct roll call?
A. Depending on the day, yes.
Q. So is it more often that both of you will be present at roll call? I mean present when the other officers are present.
A. I can't give you the amount of time. There are other responsibilities we need to fill. One of us will do that and one will do roll call. He has responsibilities at court, so days he is gone I am at roll call. So it is not set in stone when we are there.
Q. The occasion you mentioned when the issue may have come up at roll call, was that an occasion at which you were present at roll call? Is this a conversation you were present for?
A. Yes.
Q. Do you remember how it came up?
A. It was just general discussion at roll

call.
Q. Was there something in the roll call binder that suggested that particular subject ought to be discussed?
A. No, not at all.
Q. Did you ever see anything in writing about that issue?
A. No.
Q. Do you know whether it was Sergeant Lacey that raised the issue or whether it was one of the patrol officers?
A. I am sure it was one of the patrol officers.
Q. Do you remember who it was?
A. No. When I walked in the room, there was discussion. When you walk into the room, they stand up and salute you and the discussion ends.
Q. Did you ever hear anyone suggest that Captain Matarese arrested Mr. Mauti as a favor to Chief Scuncio of Hopkinton?
A. Yes, I have heard that.
Q. When did you first hear that?
A. Again, it was in a roll call setting with patrolmen discussing it.

# Exhibit N

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

CHARLES MAUTI :
:
VS. : C.A. NO.: 06-61T
:
LAUREN MATARESE, ET AL. :

DEPOSITION OF MICHAEL TURANO, a Witness in the above-entitled cause, taken on behalf of the Plaintiff, before Barbara Warner, Notary Public in and for the State of Rhode Island, at the offices of Noel & Gyorgy, LLP, 50 South Main Street, Providence, RI, on September 8, 2006 at 9:30 A.M.

PRESENT:
FOR THE PLAINTIFF............. NOEL & GYORGY, LLP
BY: JOHN P. GYORGY, ESQUIRE

FOR THE DEFENDANT............. OLENN & PENZA, LLP
BY: MICHAEL COLUCCI, ESQUIRE

ALLIED COURT REPORTERS
115 PHENIX AVENUE
CRANSTON, RI 02920
401-946-5500


cf089fe7-7d41-4971-bb21-eed2f2c66c84

I N D E X


| WITNESS | PAGE |
|---|---|
| MICHAEL TURANO | |
| EXAMINATION BY MR. GYORGY................ | 3 |


E X H I B I T S


| NO. | DESCRIPTION (PLAINTIFF'S) | PAGE |
|---|---|---|
| 1. | POLICIES AND PROCEDURES............. | 19 |
| 2. | RESPONSE TO REQUEST NO. 1........... | 44 |
| 3. | NCIC PRINTOUT....................... | 70 |




cf089fe7-7d41-4971-bb21-eed2f2c66c84

him answer the question.
MR. GYORGY: Read back the question.
(QUESTION READ BACK)
A. It is our policy to arrest people for misdemeanor violations, yes.
Q. Without a warrant?
A. Yes.
Q. Is that true for all traffic stops for misdemeanor offenses?
A. Yes.
Q. Do you have an understanding of the difference in terms of the motor vehicle code between misdemeanor offense and the civil violation?
A. Yes.
Q. What is your understanding of that difference?
A. Misdemeanor offense is a criminal matter that is heard in the District Court. And the other violation is heard in the Municipal Court or the Traffic Tribunal and is civil in nature.
Q. When it is civil in nature, does that mean to you as a police officer that someone who

violates it is not subject to arrest?
A. I can't think of any statute off the top of my head that if it is not a misdemeanor or felony that I would place somebody under arrest.
Q. In your view, in your professional view, you classify offenses as felony, misdemeanor, and those two together as criminal offenses and the civil violation is a separate, noncriminal category?
A. I think that is how the law is read, yes.
Q. Do you know who the department's terminal agency coordinator is?
A. I don't.
Q. Do you know what that title refers to?
A. I could guess.
Q. You have not made any uneducated guesses up to this point. Let me ask you for your educated guess.
A. I would guess that is the NCIC terminal in dispatch and what goes through it.
Q. During the time you have been with the department, have there been any written instructions or policies or procedures with

because they attended a course or they solicited them from some outside source, they would find their way to you eventually?
A. Generally.
Q. Unless the person threw them away without giving them to you?
A. Yes. We run into that quite a bit.
Q. Nothing unique to your profession. Do you do internal reporting to Captain Matarese or the Chief on your activities as director of training?
A. The Chief will inquire at staff meetings what is coming up on training and what have we done. I send part of my monthly reports to him, what we have done for in-house training and who has attended outside training. He knows who has attended the outside training because the selection process involves him and somebody from the union to select the person.
Q. And is it accurate to say the department may end up with one or two slots at a training seminar and he and the union will pick who fills them, even if five people

# Exhibit O

Offense Listing
From: 01/01/2002 Thru: 11/03/2006

| State Law | Civil | Warnings | Verbal | Arrests | Criminal | Totals |
|---|---|---|---|---|---|---|
| 31-10 / 1/4 | 3 | 0 | 0 | 1 | 0 | 4 |
| 31-13 / 4 | 1 | 0 | 0 | 0 | 0 | 1 |
| 31-14 / 2 | 1 | 0 | 0 | 0 | 0 | 1 |
| Grand Total: | 5 | 0 | 0 | 1 | 0 | 6 |

# **Exhibit P**

MJC:mes 6615/8 \pleading\66158suppresponse.wpd

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| CHARLES MAUTI | : | |
| | : | |
| VS. | : | C.A. NO. 06-61T |
| | : | |
| LAUREN MATARESE, ET AL | : | |

**DEFENDANT MELLO'S SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION DATED 6/28/06**

Now comes the defendant, Edward Mello, and supplements his initial response to the plaintiff's request for production dated June 28, 2006, as further ordered by the Memorandum and Order of United States Magistrate Judge Lincoln D. Almond, dated October 16, 2006.

1. Documents relating to, describing or evidencing Mr. Mauti's arrest on May 10, 2005.

**Response:** Produced are the following documents:

- Arrest Report No. 05-393-AR;
- Citation/Violation Ticket No. 05-504-000531;
- District Court Summons for appearance on May 20, 2005;
- District Court Criminal Complaint No. 05-001882;
- Notice of court dates;
- Bail and recognizance conditions;
- Letter dated May 23, 2005, from Lise Gescheidt to Leo Manfred;

**Additional Response:** Produced are the booking photos (2) and finger print card relating to the plaintiff's arrest on May 10, 2005. In station video was previously recycled in the ordinary course.

3. Documents relating to, describing or evidencing any training or instruction of the members of the Department during the past five years that included any of the following subjects:

a. arrest procedure;

b. arrest warrants;
c. probable cause;
d. traffic stops;
e. access to criminal information databases; and
f. preparation of reports.

**<u>Response:</u>** Objection. Overbroad and not related and/or limited to the issues involved in this complaint, or likely to lead to the discovery of admissible evidence.

4. Documents relating to, describing or evidencing the training of Lauren Matarese and Frank Brancato, whether conducted by the Department, the Municipal Police Training Academy, or any other agency or individual, including, but not limited to transcripts of attendance, grades or other records of performance, courses of instruction, descriptions of course work or materials, and certificates or diplomas.

**<u>Response:</u>** Produced: Matarese - Beta Stamp #'s 1 - 54; Brancato - Beta Stamp #'s 55 - 65.

**<u>Additional Response (3 & 4):</u>** Produced are the following documents:

- Rhode Island Law Enforcement Officers guide to criminal procedure by John J. Ryan.

- Professional Traffic Stop.

Matarese no longer has her training materials from the Rhode Island Municipal Police Academy. A search continues to determine whether Brancato's materials can be located.

5. Documents relating to, describing or evidencing policies, procedures, or rules followed by the Department with respect to access to and use of the databases maintained by or made available through the Rhode Island Law Enforcement Telecommunications System (RILETS), the National Criminal Information Center (NCIC), the Rhode Island Registry of Motor Vehicles, or the Rhode Island Bureau of Criminal Identification (BCI), or which describe, interpret, or decipher the coded inputs and outputs of any of these databases.

**<u>Response:</u>** Objection, overbroad as to databases not alleged or shown to have been used in connection with the plaintiff. As to the RILETS database, objection, as the same is immaterial and not calculated to lead to the discovery of admissible evidence, see *State v. Bjerke*, 697 A.2d 1069 (R.I. 1997).

**<u>Additional Response:</u>** The Westerly Police Department NCIC guidelines manual is available for production pending the plaintiff's assent to that stipulation outlined by defense counsel in his letter of November 3, 2006, to plaintiff's counsel or, in the alternative, pending resolution of a motion for protective order regarding the dissemination of said manual.

7. Documents relating to, describing or evidencing any inquiries made by any member of the Department or other Town employee regarding Charles Mauti using the databases maintained by or made available through RILETS, the NCIC, the Rhode Island Registry of Motor Vehicles, or the Rhode Island BCI.

**Response:** See RILETS checks previously produced by defense counsel on or about May 19, 2006, and reproduced here.

**Additional Response:** Produced are the "terminal screen display" NCIC results still available from the arrest folder, dated May 10, 2005, with redaction for unrelated "sexual offender" individuals.

11. Documents relating to, describing or evidencing any arrests by members of the Department for the violation of R.I.G.L. §31-10-1(a) during the past five years.

**Response:** Objection, overbroad, immaterial, and not calculated to lead to the discovery of admissible evidence, see *State v. Bjerke,* infra.

12. Documents relating to, describing or evidencing any citations issued by members of the Department for the violation of R.I.G.L. §31-10-1(a) during the past five years.

**Response:** Objection, overbroad, immaterial, and not calculated to lead to the discovery of admissible evidence, see *State v. Bjerke,* infra.

13. Documents relating to, describing or evidencing any misdemeanor prosecutions by the Town of Westerly based upon violation of R.I.G.L. §31-10-1(a) during the past five years.

**Response:** Objection, overbroad, immaterial, and not calculated to lead to the discovery of admissible evidence, see *State v. Bjerke,* infra.

16. Documents relating to, describing or evidencing any traffic citations issued by members of the Department within the last two years, including the specific statutory offense charged.

**Response:** Objection, overbroad, immaterial, and not calculated to lead to the discovery of admissible evidence, see *State v. Bjerke,* infra.

17. Documents relating to, describing or evidencing any custodial arrests by members of the Department for violation of any section of Title 31 of the Rhode Island General Laws within the last two years, including the specific statutory offense charged.

**Response:** Objection, overbroad, immaterial, and not calculated to lead to the discovery of admissible evidence, see *State v. Bjerke,* infra.

18. Documents relating to, describing or evidencing any misdemeanor prosecutions by the

Town of Westerly based upon violation of any section of Title 31of the Rhode Island General Laws within the last two years, including the specific statutory offense charged.

**Response:** Objection, overbroad, immaterial, and not calculated to lead to the discovery of admissible evidence, see *State v. Bjerke,* infra.

**Additional Response (11-13 and 16-18):** Produced (1 page) listing of offenses in question from 1/1/02 through 11/3/06.

21. Documents relating to, describing or evidencing any suspension, investigation, reprimand, or other discipline of either defendant Matarese or defendant Brancato by the Department during the last ten years, including, but not limited to Matarese's suspension and/or administrative leave from the Department in or about November, 2005.

**Response:** Objection, such records, to the extent they exist, are protected from publication by the Rhode Island Law Enforcement Officers Bill of Rights and Rhode Island's Access to Public Records Act.

**Additional Responses:** Produced are disciplinary records relating to Captain Matarese. Bates Stamp #01 - 56.

22. Telephone records for the department issued cell phones and papers used by defendants Matarese and Brancato for the months of April, May, and June, 2005.

**Response:** Objection, overbroad, unduly burdensome, and not limited to matters remotely related to this action.

**Additional Response:** Phone records for defendant Matarese for the month of April, May and June, 2005, are produced.

23. Records of any communications to or from defendants Matarese and/or Brancato on May 9 and May 10, 2005.

**Response:** None.

**Additional Records:** None.

DEFENDANT, EDWARD MELLO,
By his Attorney,

Michael J. Colucci, Esq. #3302
OLENN & PENZA, LLP
530 Greenwich Avenue
Warwick, RI 02886
PHONE: (401) 737-3700
FAX: (401) 737-5499

**CERTIFICATION**

I certify that I sent a true copy of the within on 12/6/06 to:

John P. Gyorgy, Esq.
50 South Main Street
Providence, RI 02903

Maureen E. Sunden

# **Exhibit Q**

STATE OF RHODE ISLAND
WASHINGTON, SC

FOURTH DIVISION
DISTRICT COURT

TOWN OF WESTERLY

VS

41/2005-001882

CHARLES M. MAUTI

DEFENDANT'S MOTION TO SUPPRESS

Now comes the defendant in the above entitled matter and moves that all tangible and testimonial fruits of this motor vehicle stop on May 10, 2005 in the Town of Westerly, County of Washington, State of Rhode Island, effectuated on the defendant be suppressed, as they were seized in violation of US Const. Amends. IV, V, VI and XIV, and RI Const. Art. 1, §§ 6 and 10.

Defendant moves to suppress said evidence for, inter alia, the following reasons:

1. Said search was not incidental to a lawful arrest.
2. Said search was made without the consent of the defendant.
3. Said search was made without probable cause.
4. Said search was not incidental to an arrest warrant.
5. Said search was not pursuant to a valid search warrant.
6. Said search of the defendant was a violation of the terms and provisions of the Constitution of the State of Rhode Island, the Constitution of the United States, and all applicable case law pertaining thereto

CHARLES M. MAUTI

By his Attorney,

LISE J. GESCHEIDT #1962
MACFADYEN, GESCHEIDT & O'BRIEN
101 Dyer Street
Providence, RI 02903
(401) 751-5090

CERTIFICATION

I hereby certify that I faxed and mailed a copy of the within Motion to Suppress to Captain Lauren Matarese, Prosecution Officer for the Town of Westerly, Union Street, Westerly, RI 02891 on the 23rd day of May, 2005.

# **Exhibit R**

STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

WASHINGTON, SC.

FOURTH DIVISION
DISTRICT COURT

STATE OF RHODE ISLAND
WESTERLY POLICE DEPARTMENT

VS.

CR. COMPLAINT NO. 2005-001882

CHARLES MAUTI

STATE'S MEMORANDUM REGARDING DEFENDANT'S MOTION TO DISMISS

FACTS OF THE CASE:

While returning from the gas pump, Captain Matarese was traveling on Grove Avenue in the construction zone, when a worker motioned about a vehicle that had just passed him. Captain Matarese turned around and stopped RI Reg. P-712 on High Street. The operator of the vehicle was identified as Mr. Charles M. Mauti. He presented an Arizona driver's license. He stated he had been residing in the area for several years and had the RI application at home, but never completed it. He then stated that he was considering returning to Arizona. He was advised that under the Statute 31-10-1 he must obtain a RI license within thirty days of establishing residency. Captain Matarese has personal knowledge the Mr. Mauti has in fact been a local resident for several years. Mr. Mauti was charged with No RI License and released for a court date of 5-20-05. With his permission, his vehicle was removed to the Sorensen and McCuin parking lot so it would not be towed.

ISSUE:

Does the RI District Court have jurisdiction over a criminal no license charge against Charles M. Mauti?

I. ARGUMENT AND CASE LAW:

The Defendant argues that defendant is charged with a violation of 31-10-1 and raises by motion the lack of jurisdiction of the District Court to handle Mr. Mauti's no license charge, and further states it is a civil matter with jurisdiction in the RITT pursuant to 31-27-13 and 8-8.2-2.

The Town of Westerly argues, thru its solicitor, that 31-10-1 "License required to drive" is clear as to the requirements to necessary to hold a valid RI drivers license. That statute should also be looked at in conjunction with 31-11-18 which declares that it is a misdemeanor to drive without a license. The penalty has a maximum penalty of a year in jail as a misdemeanor.

CONCLUSION:

As a result of the above argument 31-27-13 and 8-8.2-2 do not apply and the motion to dismiss should be denied.

THE STATE OF RHODE ISLAND
WESTERLY POLICE DEPARTMENT
By and through its Attorney

LEO F. MANFRED II, ESQUIRE
47 High Street - P.O. Box 1996
Westerly, RI 02891
401-596-3534

CERTIFICATION

I do hereby certify that on the 27th day of MAY, 2005, I mailed/hand delivered a true copy of the within Memorandum to Attorney LISE GESCHEIDT, ESQ, 101 DYER ST., PROVIDENCE, R.I. 02903 and provided the original to the Fourth Division District Court.

LEO F. MANFRED II, Esquire

districtcourtmemo.wps