UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

CHARLES MAUTI,

v. CA NO. 06-61T

LAUREN MATARESE, ET AL.

# PLAINTIFF'S STATEMENT OF DISPUTED MATERIAL FACTS AND ADDITIONAL UNDISPUTED MATERIAL FACTS PRECLUDING SUMMARY JUDGMENT [LR CV 56(A)(3) AND (4)]

Plaintiff Charles Mauti submits this Statement of Disputed and Undisputed Facts pursuant to Local Rule 56(a) in support of his Objection to the Motion for Summary Judgment filed by the defendants.

## DISPUTED MATERIAL FACTS

The following numbered paragraphs of Defendants' Statement of Undisputed Facts are disputed on the basis of the materials referenced. Each disputed fact from Defendants' Statement of Undisputed Facts is quoted in full, followed by plaintiff's response.

4. As he was so operating his vehicle, the plaintiff was not in possession of a Rhode Island driver's license and he was not a licensed Rhode Island driver.

**Response:** When stopped the plaintiff presented a valid Arizona license which entitled him to drive within the State of Rhode Island. Exhibit A (Affidavit of Charles Mauti ¶ 10)

- Matarese admits that plaintiff presented his Arizona license. Exhibit C Exhibit C (Arrest Report); Affidavit of Lauren Matarese, ¶ 6
- Westerly Police Department personnel conducted an NCIC/RILETS inquiry at 7:28 a.m. on the morning of May 10, 2005, checking the status of plaintiff's Arizona license. Exhibit D (NCIC/RILETS Inquiry list)
- Matarese testified at her deposition that she requested dispatch to run the checks on the plaintiff and that the response from dispatch was that Mr. Mauti had an "active" Arizona license. Exhibit E (Deposition of Lauren Matarese, p. 102, ll. 6-11; p. 103, ll. 4-7)

11. As she was passing by, one of the construction workers motioned to her, with hand gestures, to turn her attention toward the plaintiff's vehicle.

**Response:** Plaintiff disputes this contention.

Defendant Lauren Matarese has made several contradictory statements about the purported actions of the construction worker on the side of the road.

- Immediately after stopping the plaintiff, Matarese informed him that she had stopped his vehicle because a construction worker had "pointed" at it. Exhibit F (Defendant Lauren Matarese's Response to Requests for Admissions, Request No. 12 and 13)
- Prior to the plaintiff's initial arraignment, Matarese told Lise Gescheidt, who represented Mr. Mauti, that the construction worker pointed at Mr. Mauti's car, but she did not talk to the

worker or know why he pointed at the car Exhibit B (Affidavit of Lise Gescheidt, ¶¶ 2, 3, 4(a) and (b)

- In her affidavit submitted in support of defendants' Motion for Summary Judgment, Matarese stated that her justification for stopping the plaintiff was the construction worker "pointing at" plaintiff's vehicle. (Affidavit of Lauren Matarese, ¶ 4)
- Matarese now asserts that the construction worker "appeared to be speaking broken English and saying something to the effect of, 'that blue car, that blue car.'" (Affidavit of Lauren Matarese, ¶ 4)
- In the arrest report written immediately after plaintiff's arrest, Matarese made no mention of hearing the worker say anything or seeing him "appear" to be speaking. Exhibit C (Arrest Report)
- Matarese testified at her deposition that she conducts training on report writing at the Westerly Police Department, and that she stresses being very "specific" and "detail-oriented" in writing reports. Exhibit E (Deposition of Lauren Matarese, p. 29, ll. 16-20; p. 32, ll. 22-25; p. 33, ll. 1-2)
- Matarese acknowledged at her deposition that her memory fades over time and that arrest reports are going to be more accurate the closer in time they are produced relative to the events they record. Exhibit E (Deposition of Lauren Matarese, p. 28, ll. 2-4; p. 41, ll. 4-19)

12. Given the actions of the construction worker, Matarese suspected that there may have been some type of legal problem with the operation of his vehicle in that construction zone area and therefore, she proceeded to initiate a motor vehicle stop of the plaintiff's vehicle.

**Response:** Plaintiff disputes this contention. As an initial matter, plaintiff disputes defendant's contention that Matarese's state of mind is an undisputed "fact."

- Matarese informed Lise Gescheidt, prior to the plaintiff's initial arraignment, that she "did not observe any traffic or motor vehicle violations in her presence." Exhibit B (Affidavit of Lise Gescheidt, ¶ 4a)
- Matarese informed Lise Gescheidt, prior to the plaintiff's initial arraignment, that she "did not have any conversation with the construction worker before stopping Mr. Mauti's car, and she did not know why he pointed at it." Exhibit B (Affidavit of Lise Gescheidt, ¶ 4b)
- Immediately after stopping the plaintiff, Matarese informed him that she had stopped his vehicle because a construction worker had "pointed" at it. Exhibit F (Defendant Lauren Matarese's Response to Requests for Admissions, Request No. 12 and 13)
- Matarese was questioned at her deposition about the statement in her affidavit that the "actions of the construction worker, caused

me to suspect that there may have been some type of problem/motor vehicle infraction involving the vehicle that the worker was pointing at." (Affidavit of Lauren Matarese, ¶ 4) Matarese testified that that statement should be interpreted as some type of problem "and/or" a motor vehicle infraction. Exhibit E (Deposition of Lauren Matarese, p. 170, ll. 18-25; p. 171, ll. 1-4)

13. Matarese requested production of the plaintiff's license and registration. The plaintiff produced an Arizona driver's license and a registration belonging to some type of trailer, not the vehicle he was operating,

**Response:** Plaintiff disputes this contention.

- Plaintiff produced the registration belong to the vehicle he was driving. The registration was contained in a packet which also contained the registration for a boat trailer. The Bronco and trailer registrations were folded together and clipped with a paper clip. Exhibit A (Affidavit of Charles Mauti ¶ 9)
- The arrest report contains no mention of the plaintiff's failure to produce the registration belong to the vehicle he was driving. Exhibit C (Arrest Report)
- Matarese testified at her deposition that if a vehicle is not registered the police cannot "legally" allow that vehicle to return to the road. Exhibit E (Deposition of Lauren Matarese, p. 101, ll. 11-16, 24-25; p. 102, l. 1)

14. After some short discussion concerning the reasoning behind the plaintiff's lack of a Rhode Island license, Matarese decided to arrest him for operating without a Rhode Island license.

**Response:** Plaintiff disputes this contention.

- Matarese returned to Mr. Mauti's car and informed him that it was a violation of Rhode Island law not to have a Rhode Island driver's license if you have lived in the state for more than thirty days. Exhibit A (Affidavit of Charles Mauti ¶ 13)

15. Matarese requested a regular marked patrol unit in order to transport the plaintiff to the police station. Officer Brancato arrived in response thereto and transported the plaintiff to the police station.

**Response:** Plaintiff disputes this contention.

- Westerly Police Patrolman Frank Brancato pulled up behind Matarese's unmarked car immediately after plaintiff produced his drivers license, proof of insurance, and vehicle registration, and prior to Matarese returning to her vehicle. Exhibit A (Affidavit of Charles Mauti ¶ 12)

16. Plaintiff's identity was confirmed and documented at the police station and, after being finger printed and photographed, he was issued a summons to appear in the state district court for violation of RIGL 31-10-1.

**Response:** Plaintiff disputes this contention.

- The arrest report states that Matarese had "personal knowledge that Mr. Mauti has in fact been a local resident for several years." Exhibit C (Arrest Report)
- Matarese informed Lise Gescheidt, prior to the plaintiff's initial arraignment, that when "Mr. Mauti gave her an Arizona driver's license, she recognized his name and knew he was a Rhode Island resident because of a previous dispute he had with the Town." Exhibit B (Affidavit of Lise Gescheidt, ¶ 4c)
- Matarese, in a follow-up answer to questioning about why she maintained a file on Mr. Mauti in her office that contained documents which the Westerly Police Department was ordered by the Rhode Island District Court to destroy, testified that she maintained the file because she was aware of Mr. Mauti's "reputation for bring suit." Exhibit E (Deposition of Lauren Matarese, p. 153, ll. 2-18; p. 154, ll. 18-19)
- Westerly Police Department personnel conducted an NCIC/RILETS inquiry at 7:28 a.m. on the morning of May 10, 2005, checking the status of plaintiff's Arizona license. (NCIC/RILETS Inquiry list)
- Matarese testified at her deposition that she requested dispatch to run the checks on the plaintiff and that the response from dispatch

was that Mr. Mauti had an "active" Arizona license. Exhibit E (Deposition of Lauren Matarese, p. 102, ll. 6-11; p. 103, ll. 4-7)

17. As a professional courtesy, Matarese then drove the plaintiff to the local registry of motor vehicles where he could apply for a Rhode Island operator's license, while advising him that if he were to that and furnish proof of the same at his appearance date, she would recommend dismissal of the charge.

**Response:** Plaintiff disputes this contention.

Corporal David Lachapelle, of the Westerly Police Department, testified at his deposition that he was told by either Sergeant Lacey or Seargeant Trombino, also Westerly Police Department officers, that Matarese was instructed by Joe Touro, the Westerly Town Manager, to transport Mr. Mauti to the local registry of motor vehicles. Exhibit G (Deposition of David Lachapelle, p. 98, ll. 19-25; p. 99, ll. 1-25)

18. The plaintiff surrendered his Arizona license to the Rhode Island Registry of Motor Vehicles and obtained a temporary driving permit from the State of Rhode Island.

**Response:** Plaintiff disputes this contention.

- Plaintiff turned in his Arizona license to the Rhode Island Registry of Motor Vehicles and was issued a temporary receipt for his Rhode Island drivers license. Plaintiff was not required to take either a road test or written exam. Exhibit A (Affidavit of Charles Mauti ¶ 25)

21. District Court Judge Stephen P. Erickson, did not agree with the jurisdictional argument that was raised noting, at one point, that perhaps Mr. Mauti may have been charged under the wrong statute but that "clearly, driving without a license is within the jurisdiction of this court" and ultimately referring to RIGL 31-11-18, see App. 3, (transcript of proceedings before Judge Erickson on 5/20/05) at pages 3 and 6-8. Id.

**Response:** Plaintiff disputes this contention.

- During the May 20, 2005 arraignment, State District Court Judge Stephen P. Erickson did state that "driving without a license is within the jurisdiction of this court." However, he was clearly referring to a violation of RIGL 31-11-18. Judge Erickson did not rule on whether the same conduct which constitutes a violation of RIGL 31-10-1, could also constitute a violation of RIGL 31-11-18. Judge Erickson noted that Mr. Mauti's motion raised "a valid point," but he was not going to rule on the motion to dismiss without giving the Town of Westerly an opportunity to present a memo. (Transcript of proceedings before Judge Erickson on 5/20/05, pp. 3, ll. 10-16; p. 6, ll. 2-14; p. 7, ll. 9-17; p. 10, ll. 4-8)

## ADDITIONAL UNDISPUTED FACTS PRECLUDING SUMMARY JUDGMENT

1. The defendants concede that violation of R.I.G.L. 31-10-1 is at most a civil violation. (Memorandum in Support of Defendants' Motion for Summary Judgment, p. 5); Exhibit H (Transcript of Hearing on Plaintiff's Motion to Compel Production of Documents, October 13, 2006, p. 36).

2. Immediately after Mr. Mauti was arrested, Officer Frank Brancato agreed with his shift supervisor, Corporal David Lachapelle, that Mr. Mauti's conduct did not amount to an arrestable offense and that Mr. Mauti should have been issued a Rhode Island Traffic Tribunal citation. Exhibit G (Deposition of David Lachapelle, p. 103, ll. 23-25; p. 104, ll. 1-25; p. 105, ll. 1-25)

3. Despite the defendant's concession that violation of R.I.G.L. 31-10-1 is at most a civil violation, Matarese continues to believe that R.I.G.L. 31-10-1 is not a civil violation and that Mr. Mauti was correctly charged. Exhibit E (Deposition of Lauren Matarese, p. 125, ll. 20-25, p. 126, ll. 1-25, p. 127, ll. 1-25, p. 128, ll. 1-2)

4. On May 9, 2005, someone from the Westerly Police Department ran NCIC/RILETS checks on Charles Mauti. Exhibit D (NCIC/RILETS Inquiry sheet).

5. The WPD does not know who conducted the NCIC/RILETS checks on May 9, 2005. Exhibit I (Deposition of Donald Cornell, p. 63, ll. 20-25; p. 64, ll. 1-4)

6. Lieutenant Mark Wright, the WPD's Terminal Access Coordinator, testified that the NCIC/RILETS system can only be used for law enforcement purposes. Exhibit J (Deposition of Mark Wright, p. 4, ll. 3-6; p. 9, ll. 7-15)

7. According to WPD dispatcher Donald Cornell, Matarese has personally conducted inquiries of the NCIC/RILETS system. Exhibit I (Deposition of Donald Cornell, p. 63, ll. 3-12)

8. Matarese has attended three trainings on the use of the NCIC system. Exhibit K (Certificates of Attendance for Matarese)

9. On the morning of May 10, 2005, the plaintiff was driving a 1990 full-size Ford Bronco and was traveling along his regular and routine route from his residence in Westerly to his place of employment in the Town of Hopkinton. Exhibit A (Affidavit of Charles Mauti ¶¶ 2, 3)

10. On the morning of May 10, 2005, the traffic on Grove Avenue was steady, and there were several cars both ahead of and behind plaintiff's vehicle as it traveled along Grove Avenue. Exhibit A (Affidavit of Charles Mauti ¶ 4)

11. After Matarese stopped Mr. Mauti, she informed Mr. Mauti at the scene of the traffic stop that it was a violation of Rhode island law not to have a Rhode Island drivers license if you have lived in the state for more than thirty days. Exhibit A

(Affidavit of Charles Mauti ¶ 13); Exhibit F (Defendant Lauren Matarese's Response to Requests for Admissions, Request No. 20)

12. Matarese said nothing to Mr. Mauti indicating that he was under arrest for, or that she was considering charging him with, violating R.I.G.L. 31-11-18. Exhibit A (Affidavit of Charles Mauti ¶ 22)

13. Matarese did not inform Corporal David Lachapelle, the shift supervisor at the time of Mr. Mauti's arrest, that she was considering charging Mr. Mauti with violating R.I.G.L. 31-11-18. Exhibit G (Deposition of David Lachapelle, p. 10, ll. 3-11; p. 75, ll. 1-25; p. 76, ll. 1-25; p. 77, ll. 1-3)

14. Matarese never made any further statement to Mr. Mauti regarding the construction worker who she said pointed at Mr. Mauti's car. Exhibit A (Affidavit of Charles Mauti ¶ 7); Exhibit B (Affidavit of Lise Gescheidt ¶ 5)

15. Neither Matarese nor Brancato sought or obtained an arrest warrant prior to arresting plaintiff. Exhibit A (Affidavit of Charles Mauti ¶ 18); Exhibit F (Defendant Lauren Matarese's Response to Requests for Admissions, Request No. 29)

16. Mr. Mauti has never had any driver's license issued by Rhode island or Arizona suspended or revoked, nor has either state ever refused his application for a driver's license. Exhibit A (Affidavit of Charles Mauti ¶ 11)

17. At the time she arrested Mr. Mauti, Matarese had no evidence to suggest that his driver's license had been suspended or revoked, or that the State of Rhode Island had denied his application for a driver's license. Exhibit E (Matarese deposition, p. 128, ll. 9-22); Exhibit B (Affidavit of Lise Gescheidt ¶ 4c)

18. Matarese did not issue a citation to Mr. Mauti for driving an unregistered vehicle or failing to have the vehicle's registration, nor did she tow Mr. Mauti's vehicle from the scene, as she would be required to do if the vehicle was unregistered. Exhibit A (Affidavit of Charles Mauti ¶ 24); Exhibit E (Matarese deposition, p. 101, ll 11-25; p. 102, l. 1)

19. Someone at the WPD was aware, before Matarese stopped and arrested Mr. Mauti on May 10, 2005, that Mr. Mauti did not possess a Rhode Island license. Exhibit D (NCIC/RILETS Inquiries on May 9)

20. On May 10, 2005, the plaintiff was issued a summons, listing the "CRIME" as "No License," by the Westerly Police Department requiring him to appear in Fourth Division District Court on May, 20, 2005. Exhibit A (Affidavit of Charles Mauti, attached Ex. 2) (Summons); Exhibit F (Defendant Lauren Matarese's Response to Requests for Admissions, Requests No. 33 and 34)

21. On May 20, 2005, the Town of Westerly filed a one-count criminal complaint in the Fourth Division of the Rhode Island District Court the charging the plaintiff

with violating R.I.G.L. § 31-10-1. Exhibit A (Affidavit of Charles Mauti, attached Ex. 3) (State Court Complaint); Exhibit F (Defendant Lauren Matarese's Response to Requests for Admissions, Request No. 37 and 39)

22. Mr. Mauti's conduct on the morning of May 10, 2005, of driving with a valid Arizona driver's license after residing in Rhode Island for over thirty days is neither a criminal act nor is it a violation of R.I.G.L. 31-11-18. Exhibit L (Deposition of Sean Lacey, p10, ll. 24-25; p. 11, ll. 1-17); Exhibit G (Deposition of David Lachapelle, p. 75, ll. 1-25; p. 76, ll. 1-25; p. 77, ll. 1-3, 15-20; p. 80, ll. 17-25; p. 81, ll. 1-3; p. 91, ll. 1-23); Exhibit J (Deposition of Mark Wright, p. 16, ll. 1-25; p. 17, ll. 1-6, 21-25; p. 18, ll. 1-21; p. 19, ll. 24-25; p. 20, ll. 1-25); Exhibit M (Deposition of Stano Trombino, p. 8, ll. 23-25; p. 9, ll. 1-25; p. 10, ll. 1-25; p. 11, l. 1; p. 15, ll. 7-15); Exhibit N (Deposition of Michael Turano, p. 63, ll. 12-25; p. 64, ll. 1-12)

23. A reasonable officer would be aware that at the time Matarese arrested Mr. Mauti, it was unlawful to arrest someone for driving with a valid out-of-state license after residing in Rhode Island for over thirty days. Exhibit L (Deposition of Sergeant Sean Lacey, p10, ll. 24-25; p. 11, ll. 1-17); Exhibit G (Deposition of David Lachapelle, p. 75, ll. 1-25; p. 76, ll. 1-25; p. 77, ll. 1-3, 15-20; p. 80, ll. 17-25; p. 81, ll. 1-3; p. 91, ll. 1-23); Exhibit J (Deposition of Mark Wright, p. 16, ll. 1-25; p. 17, ll. 1-6, 21-25; p. 18, ll. 1-21; p. 19, ll. 24-25; p. 20, ll. 1-25); Exhibit M (Deposition of Stano Trombino, p. 8, ll. 23-25; p. 9, ll. 1-25; p. 10, ll. 1-25; p. 11, l. 1; p. 15, ll. 7-15); Exhibit N (Deposition of Michael Turano, p. 63, ll. 12-25; p. 64, ll. 1-12).

24. Records produced by the WPD in response to Magistrate Almond's order to produce document evidencing arrests made by the WPD for violating R.I.G.L. 31-10-1, show that Mr. Mauti was the only person arrested for violating R.I.G.L. 31-10-1 since January 1, 2002. Exhibit O (List of WPD cases involving violation of R.I.G.L. 31-10-1)

25. Matarese was aware that Mr. Mauti was a resident of Westerly, Rhode Island and an employee of Hopkinton, Rhode Island. (See response to Undisputed Fact #16 above)

26. Mr. Mauti's conduct at the time of his arrest did not pose any danger to himself or others, and posed no threat to any property. Exhibit A (Affidavit of Charles Mauti ¶ 19)

27. Westerly Police Department Chief Edward Mello was informed of Mr. Mauti's arrest and the opinion of the members of the Westerly Police Department that Mr. Mauti's conduct on May 10, 2005, did not amount to an arrestable offense. Exhibit L (Deposition of Sean Lacey, p. 55, ll. 5-25; p. 56, ll. 1-19; p. 56, ll. 20-25; p. 57, ll. 1-16); Exhibit J (Deposition of Mark Wright, p. 16, ll. 9-25; p. 17, ll. 1-6; p. 19, ll. 24-25; p. 20, ll. 1-25). Sergeant Lacey is the WPD officer in charge of Rhode Island Traffic Tribunal prosecutions, and is responsible for the motor vehicle violation citations issued by the WPD. Exhibit L (Deposition of Sean Lacey, p. 6, ll. 10-25, p. 7, ll. 1-3)

28. May 20, 2005, the Town of Westerly filed a one-count criminal complaint in the Fourth Division of the Rhode Island District Court the charging the plaintiff with violating R.I.G.L. § 31-10-1; the complaint erroneously charged R.I.G.L 31-10-1 as a misdemeanor. Exhibit A (Affidavit of Charles Mauti, attached Ex. 3)(State Court Complaint); Exhibit F (Defendant Lauren Matarese's Response to Requests for Admissions, Request No. 37 and 39)

29. Defendants admit that as Matarese has been promoted through the ranks of the Westerly Police Department, she has become less involved with and less familiar with motor vehicle infractions. (Defendant's Motion for Summary Judgment, p. 14)

30. The WPD does not require members of the WPD administration to undergo continuing training on the law or police procedures. Exhibit E (Deposition of Lauren Matarese, p. 49, ll. 18-25; p. 50, ll. 1-21)

31. Chief Mello received monthly reports on training conducted both by the department and by outside trainers, and which members of the WPD, including Matarese, participated in the trainings. Exhibit N (Deposition of Michael Turano, p. 87, ll. 9-21)

32. Chief Mello was aware that Matarese was inadequately trained to be conducting traffic stops and making arrests for traffic violations. (Deposition of Lieutenant Michael Turano, p. 87, ll. 9-21; Training Documents produced by Defendants do

not indicate that Matarese attended any training related to traffic stops or arrests for motor vehicle violations)

33. On May 27, 2005, after dismissing the Town of Westerly's complaint against Charles Mauti, the Rhode Island District Court ordered that the Town "destroy any fingerprints, photographs, physical measurements or other records of arrest and identification" of Mr. Mauti made in connection with his arrest on May 10, 2005. Exhibit A (Affidavit of Charles Mauti, attached Ex. __ (State District Court Order); Exhibit B (Affidavit of Lise Gescheidt, ¶ 6)

34. At the time of the dismissal Matarese was handed a copy of the order by attorney Lise Gescheidt. Exhibit B (Affidavit of Lise Gescheidt, ¶ 6); Exhibit E (Deposition of Lauren Matarese, p. 150, ll. 1-15)

35. Lise Gescheidt also sent another copy of the Order, with a cover letter, to the Westerly Police Department on May 31, 2005. Exhibit B (Affidavit of Lise Gescheidt, ¶ 7, attached Ex. B)

36. WPD Chief Mello produced the fingerprint card as part of the Department's Supplemental Production on December 6, 2006. Exhibit P (Defendant Mello's Supplemental Response to Request for Production Dated 6/28/06, Additional Response #1)

37. The Westerly Police Department failed to destroy all fingerprints, photographs, physical measurements or other records of Mr. Mauti's arrest and identification. Exhibit P (Defendant Mello's Supplemental Response to Request for Production Dated 6/28/06, Additional Response No. 1); Exhibit E (Deposition of Lauren Matarese, p. 152, ll. 2-15)

38. Matarese maintained her own file on Mr. Mauti in her office, in which she kept and still has a copy of the fingerprint card and booking photos of Mr. Mauti. from his arrest on May 10, 2005. Matarese failed to comply with the Order to destroy all fingerprints, photographs, physical measurements or other records of Mr. Mauti's arrest and identification. Exhibit E (Deposition of Lauren Matarese, p. 152, ll. 2-25; p. 153, ll. 1-25; p. 154, ll. 1-2)

39. Several of the WPD patrol supervisors believe that Matarese arrested Mr. Mauti as a favor to John Scuncio, the Chief of Police for the Town of Hopkinton Rhode Island. Exhibit L (Deposition of Sean Lacey, p. 51, ll. 21-25; p. 52, ll. 1-4; p. 54, ll. 13-25; p. 55, ll. 1-17); Exhibit G (Deposition of David Lachapelle, p. 91-95); Exhibit M (Deposition of Sergeant Stano Trombino, p. 17, ll. 19-25). Matarese admits receiving a phone call from John Scuncio immediately after her arrest of Mr. Mauti. Exhibit E (Deposition of Lauren Matarese, p. 64, ll. 5-10) Matarese also admits that she spoke with John Scuncio the morning of May 9, 2005, prior to the time that someone in the WPD ran the NCIC/RILETS checks on Mr. Mauti. Exhibit E (Deposition of Lauren Matarese, p. 67, ll. 4-23)

**Charles Mauti**
By his Attorneys,

/s/ John R. Harrington
John P. Gyorgy 3560
John R. Harrington 7173
NOEL & GYORGY LLP
50 South Main Street
Providence RI 02903
(401) 272-7400
(401) 621-5688 (Fax)

## CERTIFICATION

I hereby certify that on January 22, 2007, I sent a copy of the foregoing document to the following counsel of record by electronic noticing through the Court's ECF system:

Michael J. Collucci, Esq.
Olenn & Penza
530 Greenwich Avenue
Warwick RI 02886

/s/ John R. Harrington