UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

CHARLES MAUTI C.A. NO. 06-61 T

Plaintiff

vs. Providence, RI
OCTOBER 13, 2006

LAUREN MATARESE, ET AL

Defendant

BEFORE MAGISTRATE JUDGE LINCOLN D. ALMOND
(Argument on Plaintiff's Motion to Compel)

APPEARANCES:

FOR THE PLAINTIFF: JOHN P. GYORGY, ESQ.
JOHN HARRINGTON, ESQ.
NOEL & GYORGY, LLP
50 South Main St.
Providence, RI 02903
272-7400

FOR THE DEFENDANTS: MICHAEL J. COLUCCI, ESQ.
Olenn & Penza
530 Greenwich Ave.
Warwick, RI 02886
737-3700



you know, we don't know who arrested him, he'd be entitled to dig into all of this stuff to find out who it was so he can have the proper defendants. But here we are, everyone knows who did what, and when, and how, and for what reason, what the charge was. This requests, 23 requests, 180 requests for admissions, there have been 8 depositions now that have already gone forward, all on these collateral issues. And then just a week ago I got another set of discovery materials, another request for admission, another request for production, two requests for productions, excuse me. Now I intend to file some things, too, a motion for protective order, because I'm losing the entire benefit of qualified immunity. And if I'm right, and the related crimes defense applies, then the whole illegal arrest theory is out the window. And so I thought as a practical resolution to today's motion --

THE COURT: You say that the plaintiff was charged under the wrong statute. Explain that to me in a little more detail.

MR. COLUCCI: He should have been charged -- if it was 6 years ago, he could have been charged under this statute. But he should have been charged under 3111-18 which, amongst other things, states that, if



you operate in Rhode Island without ever having applied for a license you are guilty of violating that statute, which is a misdemeanor. Now I don't know if the legislature overlooked it when they changed the rest of the code. But that's still the law.

Now if you combine everything together, and you asked this question earlier, "Can you operate in Rhode Island after having lived here for 10 years and never having gotten a Rhode Island license?" Well, clearly, you cannot because 3110-1 says, if you're a resident for more than 30 days you need to get a Rhode Island license. And more than that, once you get a Rhode Island license you must surrender any licenses you have from any other jurisdiction in the country. So it's clear that our Motor Vehicle Code requires and contemplates you get a Rhode Island license. It's clear Mauti never applied for a Rhode Island license and, therefore, it is at least arguable that he violated 3111-18, which says if you operate in the state without ever having applied for a Rhode Island license. And hence, qualified immunity ought to kick in in this case. Judge Torres may disagree with me. But it is a legitimate argument to be made. It's one I made from the get-go. As I say, I'm just waiting for the green light to file because I have to follow the



pretrial order requirement in that regard. But I -- that's why I thought a practical resolution of this motion because a lot of the items being sought today may theoretically go to those other issues, and I don't agree with that because motive is completely irrelevant on the federal claim and on the state claim. Now what these new claims are going to be or how they're going to look, I really don't know because they haven't been provided yet. But, there's nothing in the record yet, nothing on the filings yet, that put motive in issue. And that goes back to 1989 in the Graham v. Connor case. I always say it, it's the not first case. You know, bad intentions don't make a good arrest bad, and good intentions don't make a bad arrest good. So again, what I thought might be a practical resolution would be to deny this motion without prejudice to renewing it after I've had a chance to have my summary judgment heard because if I win it, and anything does survive, maybe something in the amendment might survive, I don't know, it will certainly be a more narrow case, and we'll know exactly what is relevant, who remains as parties, who doesn't.

THE COURT: Won't plaintiff respond? If I were to deny it without prejudice, wouldn't plaintiff respond to your motion for summary judgment with an

EXHIBIT 1

A. No.
MR. COLUCCI: Objection. You can answer.
MR. GYORGY: What was your objection?
MR. COLUCCI: Objection. You can answer.
THE WITNESS: That is not correct.
Q. Tell me why?
A. It is not a civil violation.
Q. A violation of 31-10-1 is not a civil violation?
A. No, it is not.
Q. Tell me why you say that?
A. Because I am in the court routinely and my conversations with Judge Erickson confirms that 31-10-1 is a vehicle to be incorporated with 31-11-18, which is no license, expired license. The reason Mr. Mauti was charged on a 31-10-1 was twofold. Number one, as a courtesy to him, because it would have been easier for him to resolve this than if I charged him on a 31-11-18. And secondly to give him notice



of exactly what part of the statute he was being charged with.
Q. What part of what statute?
A. 31-11-18.
Q. The charging document in District Court is the complaint, right?
A. Yes.
Q. This does not cite 31-11-18?
A. We offered to amend it, and his attorney, Lise Gescheidt, told me that would not be necessary.
Q. When did you offer to amend it?
A. At his arraignment.
Q. Out in the hall or in court?
A. In court at a bench conversation.
MR. GYORGY: Let's go back to my question. Can you read the question back?
(QUESTION READ BACK)
Q. The complaint does not cite 31-11-18, does it?
A. No, it does not.
Q. And the summons did not cite 31-11-28, did it?
A. No, it did not. It was incorporated.



If you read 31-11-18, it makes reference to 31-10-1.
MR. GYORGY: Mark this as Exhibit 12.
(EXHIBIT 12 MARKED FOR IDENTIFICATION)
Q. Mr. Mauti did give you an Arizona license that was not on its face expired, right?
A. Correct.
Q. And you checked the status of his license at the time of the first NCIC check you ran from the scene of the arrest, right?
A. Yes.
Q. You did not get any record that his license had been suspended, right?
A. That's correct.
Q. And there was no record that his license had been revoked?
A. Right.
Q. You had no information at the time of his arrest that he had applied for a Rhode Island license and been denied, right?
A. That's correct.
Q. Take a look at Exhibit 12, which is a copy of the current version of Section 31-11-18, and tell me where you see a reference to



31-10-1?
(WITNESS PERUSES DOCUMENT)
A. Judge Erickson pointed it out at the bench to Ms. Gescheidt. It is in there. I don't know if this is the similar version. This is a 2006 version. I don't know if the 2005 version was the same. Judge Erickson pointed it out that 31-10-1 is incorporated in 31-11-18, and he also pointed out to her that he heard these matters as a matter of routine weekly. That is why I offered to amend it and dismiss it, and she said that would not be necessary.
Q. You had a fairly long discussion with Lise at the time of the arraignment?
A. Yes.
Q. You have known Lise for a fairly long time before Mr. Mauti's arrest; is that correct?
A. Yes, a few years.
Q. Was she involved in the 1998 case where you were convicted of a misdemeanor; do you remember the case I am referring to?
MR. COLUCCI: Objection to the form. You can answer.



EXHIBIT 2

Q. Which desk, your desk at work?
A. My desk at work.
Q. Why do you refer to it as the prosecution file?
A. Because I believe that all of the originals were destroyed, or whatever manner they expunge records. I am not involved in the expungement of records.
Q. Other than to give the orders to Mrs. Algiere?
A. Yes.
Q. You believe the originals were destroyed?
A. Yes.
Q. Do you know if the department has a procedure or a practice of responding to requests such as are reflected in Exhibit 13, Lise's letter, requesting that they comply with the order and advising her once they have?
A. I am not sure what the procedure is.
Q. Tell me if I have the sequence right in terms of your preparation of these documents. The first document that you prepared was the citation itself, the ticket; is that correct?



A. Yes.
Q. The second document that you prepared was the report?
A. No.
Q. What was the second document you prepared?
A. A letter for his court date notice.
Q. The notice of hearing?
A. Yes.
Q. The next document you prepared was the report?
A. No.
Q. What was the next document?
A. The criminal complaint.
Q. And the next document you prepared was the report?
A. Yes.
Q. When did you prepare the fingerprint card, the text of the fingerprint card?
A. The words?
Q. Let me back up. You mentioned mechanically how the process works. The actual image of the prints is taken by a camera and made into an electronic image and then printed on the card that includes the text, automatically includes the text that you



have input into the computer; is that right?
A. In the booking room, when Mr. Mauti was brought in, he was brought directly from the Sally port into the booking room. At that time Mr. Brancato asked him a series of questions. On that computer, he is standing at the computer and Mr. Mauti is seated. He is asking him his name and date of birth and confirming the information. That is when all of the text on the fingerprint card was done. Even before I went down, it was being done as I went down to the booking room.
Q. Is that done through the IMC system?
A. Yes.
Q. Is some of that information automatically transferred to the report as well?
A. Yes.
Q. Also as part of the IMC system, right?
A. Yes.
Q. There is more information in the report obviously than there is on the fingerprint card?
A. Yes.



Q. Is all of the information that is transferred to the fingerprint card also included in the report, or can you think of any item that is on the card but not in the report?
A. There are items on the card not in the report, such as, can I look at the report? I can tell you.
Q. We have marked it as Exhibit 9.
A. I have it. Most everything is on there. For example, height, weight, place of birth, marital status and employer, that is also on here. That would have come from when he was booked.
Q. It comes from the information that Officer Brancato input at the computer at the initial stage of the booking process?
A. Yes.
Q. So any information that is reflected on both of them will come from that initial input and it ought to be the same?
A. Yes.
Q. It keeps you from having to fill out two forms?
A. To have to duplicate your work.



EXHIBIT 3